**Charles F. McVAY, United States Trustee, Region 7, Appellant,**

v.

**Elbert Frank OTERO and Stephanie Lynn Otero, Appellees.**

**No. EP–06–CV–436–PRM.**

United States District Court, W.D. Texas, El Paso Division.

April 26, 2007.

Order Denying Reconsideration July 23, 2007.

---

---

***ORDER (1) VACATING THE UNITED STATES BANKRUPTCY COURT'S NOVEMBER 2, 2006 ORDER DENYING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS AND NOVEMBER 2, 2006 DISCHARGE OF DEBTOR AND (2) REMANDING CAUSE TO THE UNITED STATES BANKRUPTCY COURT***

MARTINEZ, District Judge.

On this day, the Court considered the appeal of Appellant Charles F. McVay, United States Trustee ("UST"), from two orders entered on November 2, 2006, by the United States Bankruptcy Court for the Western District of Texas. In those orders, the Bankruptcy Court denied the UST's motion to dismiss Appellees Elbert Frank Otero and Stephanie Lynn Otero's chapter 7 petition for abuse under 11 U.S.C. § 707(b) and discharged the Oteros. After considering the briefs filed by the UST and the Oteros, as well as the record on appeal, the Court is of the opinion that the orders of the Bankruptcy Court should be vacated and the cause remanded for the reasons set forth below.

## I. BACKGROUND

With the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("the BAPCPA"), Pub.L. 109–8, 119 Stat. 23 (2005), an above-median income debtor is barred from relief under chapter 7 when he is able to repay a statutorily-determined amount of his debt. By applying a "means test" and assessing a debtor's income and expenses, 11 U.S.C. § 707(b) screens chapter 7 petitions for "abuse." When a debtor's monthly disposable income is above the amount of $166.66, a "presumption of abuse" arises. 11 U.S.C. § 707(b)(2)(A)(i). If his monthly disposable income is less than $100.00, the presumption does not arise. *Id.* If his monthly disposable income is between $100.00 and $166.66, then the presumption arises only if the amount, taken over 60 months, is sufficient to pay at least 25 percent of the debtor's nonpriority secured debt. *Id.* The first issue in this cause is whether a particular expense, a payment made on a loan taken from a retirement plan, may be deducted by a debtor in computing his monthly disposable income.

If the presumption of abuse arises in a given case, the debtor is afforded the opportunity to rebut that presumption by establishing the existence of "special circumstances." *Id.* § 707(b)(2)(B). If the debtor cannot rebut the presumption, he has the option of having his case dismissed or converted to a chapter 13 proceeding, in which he may obtain a discharge only after repaying a set amount to his creditors. *Id.* § 707(b)(1). The second issue raised in this appeal is the procedure by which a bankruptcy court considers the existence of "special circumstances."

On July 5, 2006, Elbert Frank Otero and Stephanie Lynn Otero filed a petition under chapter 7. Their filings were later supplemented to include a second amended "Statement of Current Monthly Income

and Means Test Calculation," also known as "Official Form B22A." *See* R. Tab 15. The Oteros listed general unsecured debts of $85,060.08. R. Tab 2 at 19. They claimed an annual income of $67,546.44, giving them a "current monthly income" of $5,628.87. R. Tab 15 at 2, line 12. The Oteros then calculated their "monthly disposable income" by deducting certain standardized and actual expenses, as provided in § 707(b)(2)(A)(ii). The Oteros claimed allowable monthly expenses of $5,529.07. *Id.* at 5, line 47. Subtracting their expenses from their income, the Oteros computed a monthly disposable income in the amount of $99.80. *Id.* at 5, line 50. Since that amount is less than $100.00, the debtors indicated that the presumption of abuse did not arise in their case. *Id.* at 6, line 52.

In computing their allowable expenses on Official Form B22A, the Oteros included a monthly deduction of $163.59 on Line 42(a) ("Future payment of secure claims").[1] *Id.* at 5, line 42. The Oteros claimed this deduction for the repayment of two loans they had received in the amount of $9300.00 from the administrator of their retirement plans. *See* R. Tab 17 at 14–19 (loan agreements). On the form, the Oteros listed "Great American Life" as the creditor and indicated that the debt was secured by "Retirement Plan." R. Tab 15, line 42. The Oteros do not dispute that if the $163.59 repayment had not been deducted as an expense, the Oteros' monthly disposable income of $263.39 would give rise to the presumption of abuse.

On September 21, 2006, the United States Trustee filed a motion to dismiss the case, alleging that the loan repayments were not permissible deductions, and that therefore the case was an "abuse" under § 707(b). R. Tab 16 at 3. In their response to the motion, the Oteros argued that the repayments constituted "payments on account of secured debts," which may be deducted as a monthly expense under § 707(b)(2)(A)(iii). R. Tab 17 at 5. In the alternative, the Oteros argued that the Bankruptcy Court should find that special circumstances existed "due to their son's medical condition and anticipated medical expenses over the next five years." *Id.* at 13. While the Bankruptcy Court initially scheduled a hearing on the matter, prior to the hearing the court and the parties agreed that the court should determine the threshold legal issue of whether the loan payments in question constituted "payments on account of secured debts" under § 707(b)(2)(A)(iii). R. Tab 19, Mem. Op. on Mot. to Dismiss 1. The parties stipulated that the presumption of abuse would arise only if the repayments could not be deducted, in which case an evidentiary hearing would be held on the issue of "special circumstances."[2] Proceeding in

---

1. Line 42 of Official Form B22A states that:

   For each of your debts that is secured by an interest in property that you own, list the name of creditor [sic], identify the property securing the debt, and state the Average Monthly Payment. The Average Monthly Payment is the total of all amounts contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60.

   R. Tab 15 at 5, line 42.

2. The parties' stipulation is not set forth in the record now before the Court. The UST contends that the stipulation stated that:

   The parties understand that the Court will decide the legal issue of whether the retirement plan loan repayments may be deducted as secured debts under the "means test" pursuant to 11 U.S.C. § 707(b)(2). The parties stipulate that the presumption of abuse arises if the deduction is not allowed. In that case, an evidentiary hearing will be held in November to determine whether the debtor can demonstrate "special circum-

this manner, the Bankruptcy Court held no evidentiary hearing.

On November 2, 2006, the Bankruptcy Court issued an order denying the UST's motion to dismiss. R. Tab 20. In a separate memorandum opinion issued that day, the Bankruptcy Court explained its determination that the Oteros' retirement loan repayments were "payments on account of secured debts," and thus properly deducted under § 707(b)(2)(A)(iii). R. Tab 19, Mem. Op. on Mot. to Dismiss 6–7. The Bankruptcy Court proceeded to hold in the alternative that the Oteros' payments constituted "special circumstances" that would adequately rebut the presumption of abuse, should the payments not qualify under § 707(b)(2)(A)(iii). *Id.* at 7. In light of the Bankruptcy Court's ruling on the UST's motion, the Clerk of the Bankruptcy Court issued a "Discharge of Debtor." R. Tab 21. On November 13, 2006, the UST appealed both the Bankruptcy Court's denial of his motion and the Clerk's entry of a discharge.

## II.  ISSUES ON APPEAL

The UST's appeal raises the following questions:

1.  Did the Bankruptcy Court err in holding that the debtors' repayments of loans from their retirement plan constitute "payments on account of secured debts" under 11 U.S.C. § 707(b)(2)(A)(iii)?

2.  Did the Bankruptcy Court err in holding that the debtors' repayments of loans from their retirement plan constitute "special circumstances" under 11 U.S.C. § 707(b)(2)(B)?

3.  Did the Clerk of the Bankruptcy Court err in entering a discharge before the Bankruptcy Court's denial of the UST's motion to dismiss was final, as the UST's time to pursue an appeal of the denial had not yet expired?

In considering these issues, the Court will review the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *Carrieri v. Jobs.com Inc.,* 393 F.3d 508, 517 (5th Cir.2004). When the Bankruptcy Court's "finding of fact is premised on an improper legal standard, or a proper standard improperly applied, that finding is reviewed *de novo.*" *Id.*

## III.  RETIREMENT PLAN LOAN RE-PAYMENTS AS "PAYMENTS ON ACCOUNT OF SECURED DEBTS"

In computing his monthly disposable income, § 707(b)(2)(A)(iii) allows a debtor to deduct "payments on account of secured debts." [3] The Oteros relied on this section

---

stances" to rebut the presumption of abuse. If the deduction is allowed, the presumption of abuse does not arise.

Appellant's Br. 11. The Oteros do not dispute this statement of the stipulation. The Bankruptcy Court's memorandum opinion regarding the UST's motion states only that "the court agreed that the threshold legal issue could and would be decided on stipulated facts and the court took that matter under advisement, continuing the hearing until November 14, 2006, to consider disputed factual issues, if any remained at that time." R. Tab 19, Mem. Op. on Mot. to Dismiss 1.

**3.**  § 707(b)(2)(A)(i) provides that:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income *reduced by the amounts determined under clauses (ii), (iii), and (iv)* . . . .

11 U.S.C. § 707(b)(2)(A)(i) (emphasis added). Clause (iii) allows for the deduction of "payments on account of secured debts." *Id.* § 707(b)(2)(A)(iii).

in deducting their monthly repayments of two retirement plan loans. The Bankruptcy Court upheld the deduction, holding that such loans constitute "secured debts." R. Tab 19, Mem. Op. on Mot. to Dismiss 7. The UST contends that this determination was in error, as such loans are neither "debts" nor "secured." Appellant's Br. 14.

### A. "Secured Debts" under the Bankruptcy Code

In considering whether a loan taken from a debtor's retirement plan is a "secured debt," the Court looks first to the provisions of the Bankruptcy Code. *See Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985) ("It is axiomatic that the starting point in every case involving construction of a statute is the language itself." (internal quotation omitted)). The Code does not define the term "secured debt." *In re Thompson,* 350 B.R. 770, 774 (Bankr. N.D.Ohio 2006). It does, however, define the terms "debt" and "secured." An obligation will constitute a "secured debt" only if it may be considered both a "debt" and "secured." *See Sorenson v. Sec'y of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation omitted)).

■■■ In the Bankruptcy Code, "[t]he term 'debt' means liability on a claim." 11 U.S.C. § 101(12). A "claim" is in turn defined, in relevant part, as a "right to payment." *Id.* § 101(5).[4] The meanings

of "debt" and "claim" are considered to be "coextensive." *Johnson v. Home State Bank,* 501 U.S. 78, 84–85 n. 5, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Penn. Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *In re Rifkin,* 124 B.R. 626, 628 (Bankr.E.D.N.Y.1991) ("Debt and claim are flip sides of the same coin."); S.Rep. No. 989, 95th Cong.2d Sess. 23 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809 ("The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."). Therefore, each of the Oteros' retirement plan loans constitutes a "debt" only if the retirement plan administrator has a "claim" for repayment.

### B. Relevant Case Law on Retirement Plan Loans

■■■ In holding that the Oteros' retirement plan loans satisfy this criteria, the Bankruptcy Court disagreed with the overwhelming majority of courts that have addressed this issue. Among the courts that have considered the issue, "[t]here is a clear consensus that an individual's prepetition borrowing from his retirement account does not give rise to a secured or unsecured 'claim,' or a 'debt' under the Bankruptcy Code." *In re Esquivel,* 239 B.R. 146, 151 (Bankr.E.D.Mich.1999). A brief review of prior cases will be useful.

In one of the first cases to consider the Bankruptcy Code's treatment of such loans, the Second Circuit determined that a loan drawn on an employee's contribu-

---

**4.** § 101(5) provides that:

The term 'claim' means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

tions to the New York City Employees' Retirement System ("the NYCERS") was not a "debt." *In re Villarie,* 648 F.2d 810, 811 (2d Cir.1981). There, the New York City Administrative Code required the employee to repay the loan with interest, and a failure to repay the loan resulted in the employee's future benefits being reduced by the amount owed on the loan. *Id.* The Second Circuit determined that such a loan was not a "debt" under the Bankruptcy Code because the Administrative Code:

> merely directs NYCERS to deduct additional sums from a member's paycheck. It does not give the NYCERS the right to sue a member for the amount of the advance. Indeed, should a member retire or resign from the City's employ, NYCERS would merely offset the amount borrowed against his future benefits. [Such a] claim is unenforceable against the debtor. Therefore, it cannot give rise to a debt. . . .

*Id.* at 812. Under Villarie, if the plan administrator's sole source of repayment in the event of a default is to offset the unpaid balance from the debtor's future benefits, the administrator has no right to repayment from the debtor, and the loan does not constitute a "debt" under the Bankruptcy Code.

Numerous courts have adopted the reasoning of *Villarie,* and extended its holding to similar contexts. In *Mullen v. United States,* the Sixth Circuit held that an advance on a debtor's retirement benefits that subsequently must be repaid is also not a "debt." 696 F.2d 470, 472 (6th Cir. 1983). In *Mullen,* the debtor had received a "readjustment allowance" when his employment with the United States Air Force ended. *Id.* at 471. When he re-joined the Air Force, he was required to repay the allowance as an advance on his retirement pay. *Id.* In determining that the repayment was not made on a "debt," the court

considered the similar context of insurance policy loans. The court applied the legislative history of 11 U.S.C. § 101, which states that the Bankruptcy Code's definitions of "debt" and "claim:"

> will not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for set-off against any benefits that become payable under the policy. As such, the loan will not be a claim (it is not a right to payment) that the company can assert against the estate; nor will the debtor's obligation be a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. [§ ] 523 or 524.

H.R. No. 595, 95th Cong., 2d Sess. 310 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6267, *quoted in Mullen,* 696 F.2d at 472. The Sixth Circuit thus agreed with Villarie and held that no "debt" or "claim" can arise when the debtor is not liable for repayment, including cases in which the only remedy available for nonpayment is setoff against future benefits. Mullen, 696 F.2d at 472.

When a debtor is effectively borrowing money from his own retirement account or insurance policy, other courts have reached the same conclusion regarding the status of subsequent repayments, based on the same reasoning that the ability to offset the unpaid balance on a loan by deducting from the debtor's future benefits is not a "right to payment" and creates no debtor-creditor relationship. *See In re Shirley,* 2000 WL 150835, at *4 (Bankr. N.D.Iowa Jan.4, 2000) (Early withdrawal of retirement benefits does not result in a debt, as "courts have tended not to recognize the obligation as a debt. The obligations are nonrecourse in nature, with the only asset 'liable' for the debt being future

benefits. Most importantly, the obligations are in substance debts to oneself." (internal citation omitted)); *In re Esquivel*, 239 B.R. at 153; *In re Devine*, 1998 WL 386380, at *9 (Bankr.E.D.Pa. July 7, 1998) (A loan drawn from a retirement plan is not a "debt." The fact "that the pension plan administrator is a separate legal entity from the debtor is not helpful since the plan administrator is merely the trustee of a trust in which the debtor is both the settlor and beneficiary. Thus, the only funds the plan administrator had to 'loan' was the money it was holding for the debtor as a beneficiary, which was in substance the debtor's own money."); *In re Fulton*, 211 B.R. 247, 264 (Bankr.S.D.Ohio 1997) ("[F]unds borrowed from a debtor's pension plan do not constitute a debt, and the pension plan has no right of repayment against the debtor or the debtor's property which can be classified as a secured claim under the bankruptcy laws."); *In re Scott*, 142 B.R. 126, 131 (Bankr.E.D.Va.1992) (A retirement loan is not a "debt," as it "created no right to repayment that the ERISA plan can assert against the debtor. . . . The ERISA Pension Plan could not sue the debtor for the unpaid loan because its remedy is to deduct the unpaid portion of the amount advanced from any benefits the debtor was to receive in the future. The obligation on the note is not a debt in that the debtor merely withdrew money from his own account. . . ."); *In re Jones*, 138 B.R. 536, 537–38 (Bankr.S.D.Ohio 1991) (A debtor's loan from his retirement plan did not create a "debt," as "any amounts not repaid to the [retirement account] are merely offset from the Debtor's future benefits. Thus, the [plan] administrator has no right to repayment, and the

loan does not constitute a 'claim' . . . nor a 'debt.' " (internal citations omitted)).

## C. The Oteros' Retirement Plan Loans

The Oteros attempt to distinguish *Villarie* and its progeny on the grounds that the debtor in *Villarie* was claiming that his debt was dischargeable, while the Oteros acknowledge that 11 U.S.C. § 523(a)(18) makes their loan nondischargeable. Appellees' Br. 18. This distinction is unavailing. While the Second Circuit was ultimately assessing whether the loan was a dischargeable debt, the court's analysis focused on whether the obligation was even a "debt" at all. The court considered the sources to which the NYCERS could turn for repayment of the unpaid loan and found that the obligation lacked the core characteristic of a "debt"—the creditor's enforceable "right to payment." *In re Villarie*, 648 F.2d at 812. The *Villarie* court determined that the loan was not a debt at all; of course, the loan could not then be a dischargeable debt.

The Oteros' loans from their retirement plan accounts are, for all relevant purposes, indistinguishable from the loans at issue in the aforementioned cases. When the Oteros borrowed $9300.00 from the Great American Life Insurance Company ("Great American Life"), they granted the company liens on the balance of their retirement accounts.[5] The Oteros do not contest that in the event that they were to default on their loans, Great American Life would recover any unpaid balance of the loans by offsetting the value of the contract. *See* Appellees' Br. 4. Great American Life's remedy is to recover the unpaid balance from the amount which otherwise will later be paid as plan benefits to the

---

5. The loan agreement's "Qualified Annuity Contract Additional Loan Terms and Conditions" provides that "[t]he outstanding principal balance of the loan, together with any accrued but unpaid interest, shall be secured by and be a first lien upon the values of the annuity contract." R. Tab 17 at 16, ¶ 9.

Oteros.[6] Great American Life's rights are thus limited to the same extent as each of the cases addressed above.

The similarity of the Oteros' loans to those which courts have held are not "debts" is illustrated by a useful distinction drawn by the Bankruptcy Court for the Eastern District of Virginia in *Scott*. That court distinguished between cases in which the debtor borrowed an amount less than that which he had already contributed to his retirement plan and cases in which the debtor borrowed an amount in excess of his prior contributions. *In re Scott*, 142 B.R. at 131. A debtor whose borrowing is limited to his prior contributions is in essence borrowing his own money. But a debtor who borrows beyond that amount is effectively borrowing from other plan participants, and the plan administrator in such a scenario will generally have a right to recover the unpaid balance. Only the latter scenario gives rise to a "debt." *Id.* In this cause, the Oteros' loan agreement specifically limits the amount of the Oteros' loans to no more than their plans' surrender value at the time of the loan application.[7] The Oteros' loans, including interest and the outstanding balance of any prior loans, cannot exceed the amount to which the Oteros are presently entitled to under their retirement accounts. The Oteros have thus effectively borrowed their own money. Should they fail to repay the loans, then they have simply taken an advance on their retirement benefits, and Great American Life will recover no money directly from the Oteros.

6. The loan agreement states that:

   [T]he full amount of the loan shall become due and payable and [Great American Life] may apply the contract values to pay all or any part of the loan ... if any of the following apply: (a) any installment payment on any loan from the contract is not paid within 90 days of the applicable due date.... If all or any part of the contract values are applied to pay all or any part of the loan, it shall be deemed to be an amount returned to you as a surrender as a whole or in part under the contract....

   *Id.* at 16, ¶ 13. While the Oteros contend that Great American Life "is not forbidden to sue by the loan contract or by an employees' handbook," Appellees' Br. 18, the sole remedy provided for in the loan agreement is the ability to deduct the loans' unpaid balance from future plan benefits that will otherwise be paid to the Oteros. The loan agreement provides Great American Life with no other rights to recovery. Furthermore, recovery by means of a civil action will never be necessary, as section 408 of the Employee Retirement Income Security act of 1974 ("ERISA") provides that retirement plan loans such as the Oteros' must be "adequately secured." 29 U.S.C. § 1108(b)(1). As discussed in footnote 5, the Oteros' loans are secured by the benefits due to them under their retirement plans.

7. The Oteros' loan agreement provides that:

   For fixed annuity contracts, the sum of the NEW LOAN plus the current outstanding balance of any other loan(s) under the annuity contract/certificate plus interest on all loan(s) to the next contract anniversary date shall not exceed the Surrender Value. For variable annuity contracts, the sum of the NEW LOAN plus the current outstanding balance of any other loan(s) under the annuity contract shall not exceed 90% of the Surrender Value.

   *Id.* at 16, ¶ 2. While the terms and conditions of the Oteros' retirement plans are not set forth in the record now before the Court, "surrender value" is generally defined as "[t]he amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." BLACK'S LAW DICTIONARY 1586 (8th ed.2004). Furthermore, the Oteros' loan agreement states that "Section 408(b)(2) of the Employee Retirement Income Security Act of 1974 (ERISA) provides that the maximum loan(s) to you from a qualified pension/profit sharing plan or TSA subject to ERISA may not exceed 50% of the vesting benefits under the plan or contract." R. Tab 17 at 16, ¶ 4.

### D. In re Thompson

In determining that the Oteros' loans constitute "debts," the Bankruptcy Court relied on the decision of the Bankruptcy Court for the Northern District of Ohio in *In re Thompson*, 350 B.R. 770 (Bankr. N.D.Ohio 2006). R. Tab 19, Mem. Op. on Mot. to Dismiss 6. *Thompson* appears to be the only decision in which a court has concluded that repayments of a loan from a debtor's retirement plan are payments on account of a "secured debt," and thus deductible under § 707(b)(2)(A)(iii). *In re Thompson*, 350 B.R. at 774.

In reaching that conclusion, the *Thompson* court looked outside the Bankruptcy Code in order to define the term "secured debt." The court first noted that while the Bankruptcy Code does define "debt," "claim," and "secured claim," the Code does not define the term "secured debt." *Id.* The court then stated that "without a definition [of 'secured debt'] provided in the Code, the court must look to the common, ordinary meaning of the term." *Id.* The *Thompson* court thus turned to Black's Law Dictionary, which defines "secured debt" as "a debt backed by collateral." BLACK'S LAW DICTIONARY 331 (7th ed. (abridged) 2000) (cited in *In re Thompson*, 350 B.R. at 774). Based on that definition, the court found that "a debt secured by a 401(k) plan is a 'secured debt,' even though" the debt did not satisfy the Bankruptcy Code's definition of "secured claim." *In re Thompson*, 350 B.R. at 774.

The Court respectfully declines to adopt the reasoning of *Thompson* for two reasons. First, the Court is of the opinion that it is unnecessary to look outside of the Bankruptcy Code for a definition of "secured debt." As discussed above, and as the *Thompson* court recognized, the Code does provide definitions for the terms "debt" and "claim," *see* 11 U.S.C. §§ 101(5), 101(12), and it is well accepted that the two terms are used coextensively throughout the Code, *Johnson*, 501 U.S. at 84–85 n. 5, 111 S.Ct. 2150. Furthermore, the Code defines "secured claim" in 11 U.S.C. § 506(a)(1). That provision explains that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1). Since "a debt and claim are essentially 'flip sides of the same coin,' ... [t]he terms 'secured debt' and 'secured claim,' therefore, are similarly related." *In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr. E.D.Pa.1997) (quoting *In re Rifkin*, 124 B.R. at 628). Given the coextensive nature of "debt" and "claim," § 506(a)(1) may as easily be read as explaining the extent to which a "debt" is "secured:" a debt is "secured" when the creditor's claim is "secured by a lien on property in which the [debtor's] estate has an interest," 11 U.S.C. § 506(a)(1), rather than whenever the debt is "backed by collateral," BLACK'S LAW DICTIONARY 331 (7th ed. (abridged) 2000). The term "secured debt" is thus defined by the Bankruptcy Code itself, and there is no reason to look beyond the Code for such a definition.

Even if the Court were to adopt the broader definition of "secured debt" applied in *Thompson*, though, it would still return to the Bankruptcy Code for a definition of "debt." Having defined a "secured debt" as "a debt backed by collateral," the *Thompson* court determined that a debtor's retirement plan loan is a "secured debt" because the loan is "secured by a 401(k) plan." *In re Thompson*, 350 B.R. at 774. If a "secured debt" is simply "a debt backed by collateral," as the *Thompson* court believed, then the existence of collateral only addresses the question of whether the loan is "secured." It fails to ad-

dress the threshold question of whether the obligation is even a "debt." The *Thompson* court did not separately define "debt," either by reference to Black's Law Dictionary or the Bankruptcy Code, but rather assumed that the obligation to repay a retirement plan loan was a "debt."

As discussed above, in considering the definition of "debt" there is no reason to look beyond the plain terms of the Bankruptcy Code and § 101(12)'s definition of "debt."[8] *See Sorenson*, 475 U.S. at 860, 106 S.Ct. 1600 ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation omitted)); *In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr.E.D.Pa.1997) ("Although the term 'secured debts' . . . is not expressly defined by the Code, well established principles of statutory construction provide that its meaning may be divined by reference to other provisions of the statute."). The Court agrees with the numerous courts that have applied this definition to a loan drawn on a debtor's retirement plan and determined that such a loan is not a "debt" under the Bankruptcy Code.[9]

### E. The BAPCPA's Effect on the Definition of "Secured Debt"

Finally, the Oteros contend that their loan must be a "secured debt" because of the clear congressional intent shown in the enactment of the BAPCPA. The Oteros

essentially argue that even if the Bankruptcy Code, as it stood before the enactment of the BAPCPA, would require the Court to recognize that a retirement plan loan is not a "secured debt," the enactment of the BAPCPA has fundamentally altered the Code's treatment of a debtor's retirement savings. Appellees' Br. 5. Under the BAPCPA, a debtor is effectively encouraged to repay his retirement plan loan, as the amount of his repayments is excluded from the disposable income that a debtor must use to repay his creditors in a chapter 13 case. 11 U.S.C. § 1322(f).[10] The Oteros contend that since § 707(b)'s means test is designed to determine the amount that a debtor could repay his creditors if his case were converted to chapter 13, the Court should interpret "payments on account of secured debts" under § 707(b)(2)(A)(iii) broadly enough to ensure that amounts exempt from chapter 13 proceedings are not held against the debtor in determining abuse under chapter 7. Appellees' Br. 8–10.

After considering the congressional intent behind the BAPCPA and the interaction of chapters 7 and 13 proceedings, the Court declines the Oteros' invitation to redefine "secured debts" for the narrow purposes of § 707(b)(2)(A)(iii). First, the Court is of the opinion that precluding the deduction of retirement plan loan repayments in the § 707(b) means test is not inherently inconsistent with the purposes of the BAPCPA. Second, the Court finds

---

**8.** The Court notes, though, that Black's Law Dictionary itself defines "debt" in the same terms as the Bankruptcy Code, providing that a "debt" is "[l]iability on a claim." Black's Law Dictionary 432 (8th ed.2004). *See* 11 U.S.C. § 101(12) ("The term 'debt' means liability on a claim.").

**9.** Since the Court has determined that the Oteros' retirement plan loans are not "debts," the loans cannot therefore be "secured debts." The Court thus need not consider the

UST's additional argument that the loans, even if "debts," are not "secured." *See* Appellant's Br. 19.

**10.** § 1322(f) provides that: "A [chapter 13 repayment] plan may not materially alter the terms of a [retirement plan loan] and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

that the plain language of the Bankruptcy Code in its definitions of "debt," "claim," and "secured" status compels the Court to presume that Congress intended those definitions to apply in § 707(b)(2)(A)(iii). The Court will address these considerations in turn.

Looking first to the issue of Congress's intent, the Oteros note that by enacting the means test in § 707(b), Congress required the debtor to calculate the amount which he would be required to pay in a hypothetical chapter 13 proceeding. If the debtor would be able to pay a set amount to his creditors, then his case is converted to chapter 13 or dismissed. For this reason, the chapter 7 means test considers the expenses a debtor will incur over the following 60 months—the maximum period of time over which chapter 13 repayment is made. *See* 11 U.S.C. § 1322(d)(2). This also explains why, in computing his monthly disposable income under the chapter 7 means test, a debtor may deduct the administrative expenses he would pay if his case was converted to chapter 13. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(III). Such administrative expenses, applicable only in the event the case is converted to chapter 13, are relevant in a chapter 7 case only in determining the disposable income that would be available for chapter 13 repayment. The Oteros contend that since the means test only considers income that would be available for chapter 13 repayment, and amounts owed to repay a retirement plan loan are excluded from disposable income under chapter 13, such loan repayments must also be excluded from the debtor's income under the means test.

The Oteros are correct in arguing that a goal of the BAPCPA was to protect an individual's retirement savings, and that the exclusion of retirement plan loan repayments from a debtor's disposable income in chapter 13 was in furtherance of that goal. *See In re Thompson,* 350 B.R. at 776. But a second, and perhaps broader, goal of the BAPCPA was to redirect chapter 7 petitioners into chapter 13 proceedings in order to "ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so." 151 Cong. Rec. S2470 (daily ed. Mar. 10, 2005) (quoted in *In re Hardacre,* 338 B.R. 718, 720 (Bankr.N.D.Tex.2006)). The UST contends, and the Court agrees, that including a debtor's repayments of his retirement plan loan as income for the purposes of the § 707(b) means test but excluding them from the funds which must be used to repay creditors in chapter 13 is in fact consistent with these two goals. *See* Appellant's Br. 23.

Including the amounts that a debtor pays on a retirement plan loan as income under the means test does not mean that the debtor will be required to use that amount to repay creditors if his case is converted to chapter 13. Instead, including that amount merely reflects that the amount *may* be available in chapter 13 proceedings. Given that chapter 7 petitions are now screened by applying a "presumption of abuse" to debtors with qualifying incomes,[11] and the BAPCPA's goal of requiring repayment of creditors whenever possible, it is entirely reasonable to believe that Congress's intent was to convert a debtor's case to chapter 13 whenever repayment was possible, even if not a certainty.

Including retirement plan loan repayments as income in the means test is a

---

11. *Cf.* 11 U.S.C. § 707(b) (West 2004). Before the enactment of the BAPCPA, the Bankruptcy Court could dismiss a chapter 7 petition for *"substantial* abuse." *Id.* (emphasis added). Furthermore, § 707(b) provided for "a presumption in favor of granting the relief requested by the debtor." *Id.*

logical approach, as it is certainly possible that the amount a debtor pays on his retirement plan loan will subsequently be available for his chapter 13 repayment plan. A chapter 13 case is "prospective, *i.e.,* it encompasses a debtor's current and future financial circumstances for a period of two to five years." *In re Lenton,* 358 B.R. 651, 660–61 (Bankr.E.D.Pa.2006). In assessing what a debtor would be able to pay his creditors in a chapter 13 case, the § 707(b) means test must be concerned with not only what he could pay his creditors in the first month, but also what he could pay in each subsequent month of the repayment period. While the amount that a debtor pays on his retirement plan loans will not be available to creditors under chapter 13, the repayment periods of such loans are, of course, finite. In the event that the loan is paid off before the end of his chapter 13 repayment period, the trustee responsible for his case will be able to modify his plan to increase his monthly payment to creditors. *See* 11 U.S.C. § 1329. Therefore, as another court has recognized, "[e]xcluding 401(k) loans from the means test evidences a 'wait and see' approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan." *In re Lenton,* 358 B.R. at 660–61. The Court is thus of the opinion that it is entirely consistent with the congressional intent behind the BAPCPA for the chapter 7 means test to refuse to deduct certain expenses that the debtor may or may not have for the course of his chapter 13 proceeding.

■ Finally, the Court turns to § 707(b)(2)(A)(iii)'s use of plain language in allowing deductions for payments on account of "debts" that are "secured." "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotation omitted). Though the enactment of the BAPCPA brought sweeping changes to the Bankruptcy Code, the law did not amend the Code's definitions of the terms "debt," "claim," and "secured." *Compare* 11 U.S.C. §§ 101(5), 101(12), 506(a)(1) (West 2006) *with* 11 U.S.C. §§ 101(5), 101(12), 506(a)(1) (West 2004).

Of course, Congress could have altered § 101's definitions of "debt" and "claim" to expressly include a debtor's loans drawn from his retirement plan. It is understandable that Congress did not take that step, though, as those definitions apply throughout the Bankruptcy Code, and such amendments would have far-reaching effects beyond the determination of abuse under chapter 7. But if Congress wanted to extend favorable treatment to retirement plan loan repayments in chapter 13 proceedings and at the same time exempt the repayments from consideration in the chapter 7 test for abuse, Congress could have acted in a much more narrow means to accomplish that objective. Congress could have expressly provided for the deduction of such payments from a debtor's monthly disposable income under § 707(b).[12] It did not do so. Congress

---

12. § 707(b)(2)(A) expressly sets forth numerous specific expenses that a debtor may deduct in computing his monthly income. *See, e.g.,* 11 U.S.C. § 707(b)(2)(A)(ii)(II) (allowing deduction of "actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family"); *id.* § 707(b)(2)(A)(ii)(III) (allowing deduction of

instead allowed for the deductibility of "payments on account of secured debts." In doing so, Congress used a term, "debt," that has been expressly defined in § 101, which applies throughout the Bankruptcy Code. 11 U.S.C. § 101 ("In this title the following definitions shall apply....."). The Court must presume that Congress acted deliberately by using the term "debt," and the Court will not accept the invitation to redefine the term for the narrow purposes of one section of a broad statute. *See Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 988 (7th Cir.2001) ("The courts presume that Congress will use clear language if it intends to alter an established understanding about what a law means; if Congress fails to do so, courts presume that the new statute has the same effect as the older version.") (quoted in *Horton v. Bank One, N.A.,* 387 F.3d 426, 429 (5th Cir.2004)).

### F. Conclusion

Having determined that a debtor's loan from his retirement plan does not constitute a "secured debt," the Court concludes that the Oteros' monthly loan repayments are not "payments on account of secured debts" and thus are not a deductible expense under § 707(b)(2)(A)(iii). Had the Oteros not deducted the $163.59 payments as an expense on Official Form B22A, their monthly disposable income of $263.39 would have given rise to the presumption of abuse. Therefore, the Court now turns to the Bankruptcy Court's alternative holding—that even if the repayments are not deductible as "payments on account of secured debts," the payments constitute "special circumstances" sufficient to rebut the presumption.

"the actual administrative expenses of administering a chapter 13 plan for the district in

## IV. RETIREMENT PLAN LOAN REPAYMENTS AS "SPECIAL CIRCUMSTANCES"

A debtor may rebut the presumption of abuse only "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances ... justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). The establishment of "special circumstances" will only rebut the presumption of abuse if the debtor's monthly income, reduced by the expenses or adjustments constituting "special circumstances," is below the threshold amounts set forth in the chapter 7 means test. *Id.* § 707(b)(2)(B)(iv).

In their response to the UST's motion to dismiss, the Oteros argued that if the Bankruptcy Court found that their retirement plan loan repayments were not "payments on account of secured debts," then the Court should find that special circumstances existed "due to their son's medical condition and anticipated medical expenses over the next five years." R. Tab 17 at 13. As discussed above, the parties subsequently stipulated that the Bankruptcy Court would consider the legal issue of whether the loan repayments were deductible as "payments on account of secured debts," and only if the court concluded that the payments were not deductible would it need to conduct an evidentiary hearing on the issue of "special circumstances." In its memorandum opinion denying the UST's motion to dismiss, though, the Bankruptcy Court held not only that the retirement plan loan repayments were deductible as "payments on account of secured debts,"

which the debtor resides").

but also that the repayments constituted "special circumstances" sufficient to rebut any presumption of abuse.

The UST contends that this holding was in error for three principal reasons. First, the UST argues that the Bankruptcy Court was required to hold an evidentiary hearing before finding the existence of "special circumstances," pursuant to § 707(b)(2)(B). Appellant's Br. 24, 28. Second, the UST contends that it was improper to find that the retirement loan repayments constituted "special circumstances" when the Oteros had raised only their son's medical expenses. *Id.* at 25. Finally, the UST argues that even if the Bankruptcy Court's decision was procedurally sound, repayments of a retirement plan loan cannot *per se* constitute "special circumstances." *Id.* at 26–28. The Court need only address the UST's first argument, as the Court agrees that the Bankruptcy Court was required to receive additional evidence prior to finding the existence of "special circumstances."

▪ § 707(b)(2)(B) sets forth specific procedural requirements that a debtor must comply with in order to demonstrate "special circumstances." That section provides that:

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B). Accordingly, the existence of "special circumstances" requires fact-dependent analysis.

The Oteros essentially contend that an evidentiary hearing was unnecessary because all facts were already contained in the record; the Oteros had provided documentation regarding their loan agreements in their response to the UST's motion to dismiss. Appellees' Br. 26. While the Oteros' submissions allowed the Bankruptcy Court to consider the legal issue of the loan repayments' deductibility as "payments on account of secured debt," though, they certainly did not resolve all of the factual issues that must be addressed under § 707(b)(2)(B). Significantly, the UST continues to maintain that the Oteros' loan repayments are not "necessary and reasonable" expenses for which the Oteros have "no reasonable alternative." Appellant's Br. 26. Furthermore, the UST argues at some length that retirement plan loan repayments like the Oteros' can never constitute "special circumstances," as they are not sufficiently similar to the two examples of "special circumstances" identified in § 707(b)(2)(B)(i): "a serious medical condition or a call or order to active duty in the Armed Forces." *Id.* at 26–27.

▪ These important considerations were not before the Bankruptcy Court when it found "special circumstances." The Bankruptcy Court based its decision on two factors: "the fact that such payments are completely deductible under the Code's provisions governing Chapter 13 cases, and because no additional funds exist in this case that would be available to fund a Chapter 13 plan." R. Tab 19, Mem. Op. on Mot. to Dismiss 7. Those concerns will be present in every case in which deducting the amount a debtor pays on a retirement plan loan will reduce the debtor's disposable income enough to rebut the

presumption of abuse. What the Bankruptcy Court effectively decided is that a debtor's repayments of a retirement plan loan always constitute "special circumstances" and thus are always a deductible expense under § 707(b)(2). Furthermore, the Oteros' obligation to repay their loans does not itself address whether the repayments were "necessary and reasonable" expenses for which the Oteros have "no reasonable alternative." The Bankruptcy Court thus sidestepped the Bankruptcy Code's clear requirement that the existence of "special circumstances" be assessed on a case-by-case basis.

Therefore, the Court is of the opinion that this cause should be remanded to the Bankruptcy Court for further proceedings in connection with the Oteros' attempt to rebut the presumption of abuse under § 707(b)(2)(B). The Court need not presently consider the parties' arguments as to whether the Oteros' repayments of their retirement plan loans constitute "special circumstances," as that issue was not properly presented to the Bankruptcy Court at the time of its ruling.

## V. THE CLERK OF THE BANKRUPTCY COURT'S ENTRY OF A DISCHARGE

On the day that the Bankruptcy Court entered its order denying the UST's motion to dismiss, the Clerk of the Bankruptcy Court entered an order granting the Oteros a discharge. R. Tab 21. The UST contends that this was in error under Interim Bankruptcy Rule 4004(c)(1), which provides that the Bankruptcy Court shall not grant a discharge while a motion to dismiss under § 707(b) is pending. Appellant's Br. 29. According to the UST, this rule precludes a discharge not only before the Bankruptcy Court has ruled on a motion to dismiss, but also during the time in which the UST is pursuing an appeal of

the ruling. Given its aforementioned decisions regarding the Bankruptcy Court's order denying the UST's motion to dismiss, however, the Court need not address this issue. The Court will vacate the Clerk's order discharging the Oteros so that the Bankruptcy Court may proceed to consider the UST's motion to dismiss and the Oteros' attempt to rebut the presumption of abuse.

## VI. CONCLUSION

In conclusion, the Court finds that 11 U.S.C. § 707(b)(2)(A)(iii) does not allow the Oteros to deduct their monthly repayments on their retirement plan loans as "payments on account of secured debts," as their loans do not constitute "debts" under the Bankruptcy Code. Furthermore, 11 U.S.C. § 707(b)(2)(B) requires the Bankruptcy Court to receive and consider additional evidence before finding that a debtor has demonstrated the existence of "special circumstances." Because the presumption of abuse under the means test of 11 U.S.C. § 707(b) arises in the Oteros' case, the Court remands this cause to the Bankruptcy Court for a determination as to the existence of "special circumstances."

Accordingly, **IT IS ORDERED** that Appellant Charles F. McVay's appeals from the Bankruptcy Court's November 2, 2006 "Order Denying Motion of the United States Trustee to Dismiss Under 11 U.S.C. § 707(b) for Abuse" and the Bankruptcy Court's November 2, 2006 "Discharge of Debtor" are **GRANTED.**

**IT IS FURTHER ORDERED** that the November 2, 2006 "Order Denying Motion of the United States Trustee to Dismiss Under 11 U.S.C. § 707(b) for Abuse" of the United States Bankruptcy Court for the Western District of Texas is **VACATED.**

**IT IS FURTHER ORDERED** that the November 2, 2006 "Discharge of Debtor"

of the United States Bankruptcy Court for the Western District of Texas is **VACATED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to the United States Bankruptcy Court for the Western District of Texas for proceedings consistent with this order.

**IT IS FINALLY ORDERED** that the Clerk shall close this matter.

## *ORDER DENYING APPELLEES' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER OF APRIL 26, 2007*

On this day, the Court considered Appellees Elbert Frank Otero and Stephanie Lynn Otero's "Motion for Reconsideration of Order Vacating the United States Bankruptcy Court's November 2, 2006 Order Denying the United States Trustee's Motion to Dismiss and Remanding Cause to the United States Bankruptcy Court," filed on May 4, 2007, in the above-captioned cause. Therein, the Oteros ask the Court to reconsider its Order of April 26, 2007, in which the Court vacated the Bankruptcy Court's denial of a motion to dismiss filed by the United States Trustee ("UST") and vacated the Bankruptcy Clerk's entry of a discharge in the Oteros' case.[1] After due consideration, the Court is of the opinion that the Oteros' Motion for Reconsideration should be denied.

## I. PROCEDURAL BACKGROUND

On December 21, 2006, the UST filed an appeal with the Court pursuant to Federal Rule of Bankruptcy Procedure 8001. That rule provides that an appeal may be taken from a judgment of a Bankruptcy Court to a District Court. FED. R. BANKR. P. 8001. The UST sought to appeal two orders entered on November 2, 2006, by the United States Bankruptcy Court for the Western District of Texas. In those orders, the Bankruptcy Court denied the UST's motion to dismiss the Oteros' chapter 7 petition for abuse under 11 U.S.C. § 707(b) and granted the Oteros a discharge. On April 26, 2007, the Court entered an Order granting the UST's appeal, vacating the Bankruptcy Court's orders, and remanding the cause to the Bankruptcy Court.

The Oteros now move the Court to reconsider that decision. The Oteros ask the Court to reverse its prior determination that the Oteros' monthly repayments of their retirement plan loans are not "payments on account of secured debts" for purposes of the means test of § 707(b). The Oteros bring their Motion pursuant to Federal Rule of Bankruptcy Procedure 8015.[2]

## II. LEGAL STANDARD

The Fifth Circuit has not indicated the standard to be applied in considering a motion filed under Rule 8015. Given that the Advisory Committee Notes to Rule 8015 indicate that the rule was adapted from Federal Rule of Appellate Procedure 40(a), which applies to petitions for appellate panel rehearings, the Court will apply the standard set forth in that rule. *See In re A.C. Painting Co.,* 2003 WL

---

**1.** The Court has also considered the UST's "Response to Motion for Reconsideration," filed on May 14, 2007; the UST's "Advisory to the Court re Additional Authority," filed on July 3, 2007; and the Oteros' "Comment in Response to Supplemental Authority Raised by Appellant," filed on July 6, 2007.

**2.** Rule 8015 provides that "a motion for rehearing may be filed within 10 days after entry of the judgment of the district court." FED. R. BANKR.P. 8015. The Oteros' Motion is timely, given that the Court's Order was entered on April 26, 2007, and the Oteros filed their Motion on May 4, 2007.

21659382, at *1 (N.D.Tex. Mar.21, 2003) (applying Rule 40(a) to Rule 8015 analysis). A petition for rehearing filed under Rule 40(a) "must state with particularity each point of law or fact that the petition has overlooked or misapprehended." FED. R.APP. P. 40(a)(2). Such a petition "serves the limited purpose of ensuring that the court 'properly considered all relevant information in rendering its decision.'" *In re A.C. Painting Co.*, 2003 WL 21659382 at *1 (quoting *Armster v. U.S. Dist. Court*, 806 F.2d 1347, 1357 (9th Cir.1986)). "A petition for rehearing is not a 'crutch for dilatory counsel, nor, in the absence of demonstrable mistake, [is it intended to] permit reargument of the same matters.'" *Id.* (quoting *United States v. Doe*, 455 F.2d 753, 762 (1st Cir.1972)).

## III. ANALYSIS

The Court will not engage in a lengthy review of the substance of its prior Order, but believes a short overview will be useful. In determining that a debtor's repayments of a retirement plan loan do not constitute "payments on account of secured debts," the Court looked to the Bankruptcy Code's definitions of "debt," "claim," and "secured." Docket No. 20 at 6. The Court noted that the Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(12), and defines "claim" as, in part, a "right to payment," *id.* § 101(5). Given that the terms "debt" and "claim" are considered to be "coextensive," *Johnson v. Home State Bank*, 501 U.S. 78, 84–85 n. 5, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Court determined that "each of the Oteros' retirement plan loans constitutes a 'debt' only if the retirement plan administrator has a 'claim' for repayment." Docket No. 20 at 7. Agreeing with the overwhelming majority of courts that have considered the issue of retirement plan loans, the Court determined that the Oteros' plan administrators possessed no such claim, *see generally id.* at 7–10, and therefore the Court held that the Oteros' loans did not constitute "debts," *id.* at 15. Since the loans are not "debts," they necessarily cannot be "secured debts." *Id.* at 15 n. 9.

In asking the Court to find that the Oteros' repayments of their retirement plan loans are "payments on account of secured debts," the Oteros raise various arguments that were originally presented to the Court in the Oteros' briefs. The Court understands the Oteros' Motion to raise four arguments. First, the Oteros contend that the Court incorrectly interprets the definition of "debt" under the Bankruptcy Code as though it were limited to recourse debt, thereby excluding nonrecourse debts such as the Oteros' loans. Appellees' Mot. for Recons. 2–6. Second, the Oteros argue that the Court's analysis of the definition of "secured" status adopts the UST's misleading and incomplete quotation of 11 U.S.C. § 506. *Id.* at 3; Appellees' Cmt. on Suppl. Auth. 1–2. Third, the Oteros contend that the policy goals of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which excludes retirement plan loan repayments from a debtor's chapter 13 repayment plans, require that such payments be a deductible expense under the chapter 7 means test. Appellees' Mot. for Recons. 8. The Oteros attempt to distinguish various cases upon which the Court has relied, arguing that such case law is no longer persuasive in light of the goals of BAPCPA. *Id.* at 8–12. Finally, the Oteros argue that the result reached in the Court's Order "benefits no one and leads to no workable result." *Id.* at 12–13.

Many of these arguments were expressly addressed and rejected by the Court in its original Order. After reviewing these arguments, the Court is of the opinion that it has correctly applied the applicable law. The Oteros' Motion presents no new evi-

dence or argument that leads the Court to question its interpretation of the applicable law.

In their Motion for Reconsideration, the Oteros again ask the Court to reject the definitions of "debt" and "claim" set forth in the Bankruptcy Code and find that BAPCPA has somehow broadened the scope of these terms. Yet as the Court explained in its original Order, BAPCPA, while amending many parts of the Code, did not alter the definitions of "debt" and "claim" set forth in § 101 of the Bankruptcy Code. The Oteros effectively ask the Court not to apply the § 101 definitions to the term "secured debts" under 11 U.S.C. § 707(b)(2)(A)(iii) for policy reasons. The Oteros contend that since the amount of a debtor's monthly repayments of a retirement plan loan is excluded from his chapter 13 repayment plan, the amount should necessarily be deductible under the chapter 7 means test, given that the general purpose of the test is to calculate the amount which would be available to repay a debtor's creditors if his case were to be converted to chapter 13. The Court recognizes the intuitive appeal of the Oteros' position, but that is not the law as it stands. In bringing sweeping changes to the Bankruptcy Code, the BAPCPA did not amend the Code's definitions of "debt," "claim," and "secured." *Compare* 11 U.S.C. §§ 101(5), 101(12), 506(a)(1) (West 2006) *with* 11 U.S.C. §§ 101(5), 101(12), 506(a)(1) (West 2004). Furthermore, as the Court explained, "[i]ncluding retirement plan loan repayments as income in the means test is a logical approach," given the finite duration of retirement plan loans and the possibility that the money used to repay the loans will subsequently be available for the debtor's chapter 13 repayment plan. Docket No. 20 at 18. It may not be the approach desired by the Oteros, but it is not an absurd one. "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotation omitted). Given the accepted meanings of "debt," "claim," and "secured," the Court will not redefine those terms.

One argument raised by the Oteros in their Motion for Reconsideration merits additional discussion here, for it is an argument truly raised in response to the Court's original Order. The Oteros contend that the Court's analysis adopted a definition of "secured" status that is inconsistent with the Bankruptcy Code, and based its definition on a misleading and incomplete quotation of the Code offered in the UST's brief. Appellees' Mot. for. Recons. 3; Appellees' Cmt. on Suppl. Auth. 1–2. At one point in its Order, the Court explained that the Bankruptcy Code defined whether a debt or claim is "secured" in § 506(a)(1), and quoted that provision as indicating that, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property…." 11 U.S.C. § 506(a)(1) (quoted in Docket No. 20 at 13–14). The Oteros contend that this is an incomplete quotation of § 506(a)(1), and that the ellipses are significant, as that provision in fact provides that, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, *or that is subject to setoff under section 553 of this title*, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, *or to the extent of the amount subject to setoff….*" *Id.* § 506(a)(1). The Oteros argue that the omitted phrases "are all-important for this case," Appellees'

Mot. for Recons. 3, and that the Court quoted the provision inaccurately because the UST engaged in "[t]he same deliberate and misleading omission" by selectively quoting § 506(a)(1) in its brief, Appellees' Cmt. in Resp. to Suppl. Auth. 1. The Oteros label this a "strategy" by the UST, "to win this 'means testing' issue at all costs, even if the cost of doing so is to misquote the law." [3] *Id.* at 2.

The Oteros are correct that the Court quoted § 506(a)(1) only in part. But the Oteros misinterpret the Court's analysis and, as a result, overstate the significance of the omissions. The discussion of § 506(a)(1) came in the midst of the Court's discussion of a decision in which the Bankruptcy Court for the Northern District of Ohio looked outside of the Bankruptcy Code in order to define the term "secured debt." Docket No. 20 at 13. *See In re Thompson,* 350 B.R. 770, 774 (Bankr.N.D.Ohio 2006).[4] This Court found it unnecessary to turn to Black's Law Dictionary, as the *Thompson* court had, in order to define the term, as the Bankruptcy Code itself defines "debt" and "secured." Docket No. 20 at 13. *See Sorenson v. Sec'y of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). The Court quoted § 506(a)(1), albeit in part,

only to demonstrate that the Code's definition of a secured claim could in fact be applied to its definition of "debt." The Court stated that:

> [g]iven the coextensive nature of 'debt' and 'claim,' § 506(a)(1) may as easily be read as explaining the extent to which a 'debt' is 'secured:' a debt is 'secured' when the creditor's claim is 'secured by a lien on property in which the [debtor's] estate has an interest. . . . The term 'secured debt' is thus defined by the Bankruptcy Code itself, and there is no reason to look beyond the Code for such a definition.

Docket No. 20 at 14. The Oteros apparently understand that passage as indicating that the Court determined that their loans were not "secured," and the Oteros argue in their Motion for Reconsideration that the language omitted from § 506(a)(1) is in fact applicable to their loans—that the loans are "subject to setoff under section 553 of [title 11]." 11 U.S.C. § 506(a)(1). *See* Appellees' Mot. for Recons. 3. The Court was not quoting the section in order to demonstrate that the Oteros' loans were or were not secured. The Court expressed no opinion on that issue. The Court was merely indicating that the Bankruptcy Code provides a definition of secured status, just as it provides definitions of "debt" and "claim," and

---

**3.** In his original brief, the UST did in fact quote selectively from § 506(a)(1). *See* Appellant's Br. 21. It is worth nothing, though, that after the Oteros raised the issue of the additional language in their brief, the UST responded by arguing that the additional language in § 506(a)(1) was inapplicable to the Oteros' case. *See* Appellant's Reply Br. 5–7. Whether the UST's interpretation of the section is correct, the UST did directly address the Oteros' argument.

**4.** At the time the Court considered the UST's appeal, *Thompson* was the only case in which

a court had considered whether repayments of retirement plan loans constituted "payments on account of secured debts" for purposes of § 707(b)(2)(A)(iii). *In re Thompson,* 350 B.R. at 774. The Court now notes that the District Court for the Northern District of Ohio subsequently reversed the decision of the Bankruptcy Court and held that such loans are not "secured debts" by means of analysis similar to that underlying this Court's Order. *See Eisen v. Thompson,* 370 B.R. 762, 2007 WL 1880290 (N.D.Ohio 2007).

therefore a definition of "secured debt" could be obtained without searching beyond the Bankruptcy Code itself. Given the Court's determination that the Oteros' loans were not "debts" under the Code, the loans necessarily could not be "secured debts," and the repayment of such debts could not be "payments on account of secured debts" for the purposes of § 707(b)(2)(A)(iii).

## IV. CONCLUSION

For these reasons, the Court is of the opinion that the analysis contained in its Order of April 26, 2007, is sound and legally correct. After reviewing the arguments presented in the Oteros' Motion for Reconsideration, the Court believes that it "properly considered all relevant information in rendering its decision," *Armster*, 806 F.2d at 1357, and that its interpretation of the relevant provisions of the Bankruptcy Code was well-reasoned and supported by applicable case law.

Accordingly, **IT IS ORDERED** that Appellees Elbert Frank Otero and Stephanie Lynn Otero's "Motion for Reconsideration of Order Vacating the United States Bankruptcy Court's November 2, 2006 Order Denying the United States Trustee's Motion to Dismiss and Remanding Cause to the United States Bankruptcy Court" (Docket No. 22) is **DENIED.**