**In re Larry and Tracy CASTLE, Debtors.**

No. 06–30266.

United States Bankruptcy Court, N.D. Ohio.

Sept. 11, 2006.

Elliot H. Feit, Toledo, OH, for Debtors.

Ericka S Parker, Toledo, OH, for trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Debtors' Case Pursuant to 11 U.S.C. § 707(b). The Debtors, Larry and Tracy Castle, filed a Response in Opposition to the Trustee's Motion. At the conclusion of the Hearing, the Court took the matter under advisement, the issue raised being one of first impression, so as to afford a thorough opportunity to consider the merits of the Parties' respective positions. The Court has now had this opportunity, and finds, for those reason explained herein, that the Motion of the United States Trustee should be Granted.

### DISCUSSION

In its Motion, the United States Trustee (hereinafter "UST"), seeks the dismissal of the Debtors' Chapter 7 bankruptcy case under 11 U.S.C. § 707(b)(1). As a deter-

mination of dismissal under this section directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

On October 17, 2005, most of the provisions under what is known as BAPCPA[1] came into effect. This Act, the better part of a decade in the making, was passed in response to perceived abuses within the bankruptcy process. A prime concern: debtors who otherwise had the ability to repay their debts were using the bankruptcy process to escape liability, thereby raising the cost of credit for all Americans, especially those with the least ability to afford it. With respect to this concern, a key component of BAPCPA is revised § 707(b).

Section 707(b) was first enacted in 1984 to provide a mechanism by which debtors who sought to abuse the bankruptcy process could be denied its protection. But out of concern for creditor overreach, and so as to strike a proper balance between the competing interests of the debtor and the creditor, § 707(b) limited its breadth in a number of ways. See In re Green, 934 F.2d 568, 570 (4th Cir.1991). Among these, § 707(b) provided that a debtor's bankruptcy case could be dismissed for "abuse," but only if the abuse was "substantial."

The newly enacted BAPCPA, however, apparently in recognition that any "abuse" of the bankruptcy process was improper, eliminated the adjective "substantial," thereby lowering the threshold for dismissal. Another key component: section 707(b) now provides that, under certain conditions, the filing of a case by a debtor under Chapter 7 will be presumed to be an

---

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

abuse. It is this presumption of abuse which is at the center of the Parties' controversy.

Section 707(b)(2)(A)(i), the relevant provision, sets forth the initial conditions under which the presumption of abuse will arise. It provides, *inter alia*, that:

> In considering ... whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> >
> > (II) $10,000.

Restated, a Chapter 7 filing will be presumed to be abusive if, after deducting for certain allowable expenses as permitted in subclauses (ii), (iii), and (iv), the debtor's remaining income, as calculated over a five-year period, satisfies one of these two conditions: (1) it is greater than $10,000.00, or $166.66 per month; or (2) although less than $10,000.00, it is greater that $6,000.00,—that is, greater than $100.00 per month—and that amount will pay more than 25% of the debtor's unsecured debt. This calculation, however, which has become to be known as the "means test," does not apply to all debtors, with § 707(b) containing a "safe harbor" provision: debtors are not to be evaluated under the "means test" if their current monthly income is below the median income for a household of the same size in that state. 11 U.S.C. § 707(b)(7).

In this matter, the Debtors concede that the "means test" is applicable, and that through the application of the test, a presumption of abuse arises. Specifically, applying the "means test" calculation results in the Debtors having over $800.00 per month available to pay their unsecured debts. (Doc. No. 1). When a presumption of abuse arises, an individual debtor wishing to maintain the protections of the Bankruptcy Code generally has two options: (1) convert, and seek to repay some or all of their debts by formulating a plan of reorganization under Chapter 13 of the Bankruptcy Code; or (2) the debtor may seek to rebut the presumption of abuse as provided in § 707(b)(2)(B)(i). It is the lack, according to the Debtors, of the first option as a viable alternative which forms the core of their objection to the UST's Motion to Dismiss. To understand the merits of this position, it is first helpful to understand the interrelationship which now exists between the Chapter 7 "means test" and the requirements of Chapter 13 plan of reorganization.

For debtors who seeks to reorganize their financial affairs under Chapter 13 of the Code, as opposed to seeking Liquidation in accordance with Chapter 7, § 1325 sets forth the necessary prerequisites to have a plan of reorganization confirmed by the court. Among its requirements, the debtor, unless paying all claims in full, is required to devote all of their "projected disposable income" to the plan over its length which, depending on the circumstances, is to be either three or five years in length.[2] 11 U.S.C. § 1325(b)(1)(B). This, as now briefly explained, is a formulaic approach, and for those debtors with income above the state median, it is closely interwoven with the

---

**2.** The length of a debtor's plan, termed the "applicable commitment period," is determined by looking to those requirements under paragraph (4) of § 1325(b). Generally speaking, under this provision, if the debtor's current monthly income is below the median income for a household of that size in that state, the plan must be three years in length; otherwise, the plan must be five years in length.

"means test" calculation of § 707(b)(2), thereby providing symmetry between the two.

A debtor's "disposable income" for purposes of § 1325(b)(1)(B) is defined by first looking to the "current monthly income received by the debtor ..." 11 U.S.C. § 1325(b)(2). "Current monthly income" is defined in § 101(10A) and generally means the average income received by the debtor and his or her spouse from all sources during the preceding six months. This same definition is also applied when calculating whether a presumption of abuse arises under § 707(b)(2)(A)(i).

After arriving at the debtor's "current monthly income," "disposable income" is then computed by subtracting from this figure those "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ..." 11 U.S.C. § 1325(b)(2)(A)(i). For those debtors who are above the applicable median family income for a household of the same size in that state, § 1325(b)(3) goes on to provide that "amounts reasonably necessary to be expended ... shall be determined in accordance with *subparagraphs (A)* and (B) of section 707(b)(2) ...." (emphasis added). As explained, *supra,* it is subparagraph (A) which contains the "means test." It is thus this provision which, on the expense side of the equation, aligns the "disposable income" calculation with the "means test" of Chapter 7.

Left then at this stage, the "means test" calculation under § 707(b)(2)(A)(i) will exactly mirror the "disposable income" calculation of § 1325(b). And for most debtors with income above the state median, no

further adjustments are necessary. Ergo, unless the debtor is unable to meet either the $10,000.00 or $6,000.00 repayment thresholds as set forth in subclauses (I) and (II) of § 707(b)(2)(A)(i), the "means test" calculation of § 707(b)(2)(A) will also yield the amount of "disposable income" the debtor will be deemed to have available to fund a Chapter 13 plan.

However, this symmetry between the "means test" and the "disposable income" formula of § 1325(b) is not absolute. As the Debtors correctly point out, the term "current monthly income," although utilized in both § 707(b)(2)(A)(i) and § 1325(b)(2), have a key difference: unlike under § 707(b), in § 1325(b)(2) it is specifically provided that, when computing "disposable income," one is to exclude "child support payments, ... for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child." Resultantly, in situations where a debtor is receiving child support payments, the "means test" calculation of § 707(b)(2)(A)(i) will not yield the same amount that must be paid into a Chapter 13 plan.

It is this incongruity which gives rise to the Debtors' position that they should be able to proceed in a liquidating Chapter 7 bankruptcy, notwithstanding that a presumption of abuse exists. To this end, the Parties did not materially dispute these key points: First, the Debtor, Tracy Castle, receives over $1,000.00 per month in child support payments. Second, it is the inclusion of this income in the "means test" calculation which results in the presumption of abuse arising under § 707(b)(2)(A).[3]

---

**3.** For purposes of the "means test" calculation, the UST also questioned certain other expenses of the Debtors. A primary concern: the Debtors were taking deductions for payments that were due on property which the Debtors intended to surrender, with the UST taking the position that such deductions are improper. This issue, however, was not fully placed in controversy before the Court. Even so, based upon this Court's ensuing discussion, resolution of this issue has no bearing on this matter's ultimate outcome. Hence,

Third, by subtracting the child support payments when calculating the amount of "disposable income" to pay into a Chapter 13 plan of reorganization, the Debtors presently have no funds available to pay unsecured creditors—that is, they would propose a 0% plan.

Based upon these points, the Debtors, in seeking to have their Chapter 7 case proceed, approach the matter from a pragmatic standpoint, arguing that it makes no sense—in their own words, "a colossal waste of time and money"—to apply the presumption of substantial abuse which arises under § 707(b)(2)(A) when, even if their case were to be converted to Chapter 13, the remuneration to unsecured creditors, if any, would be negligible. (Doc. No. 53, at pg. 4–5). In advancing this theory, the Debtors make what can be grouped into two arguments.

First, the Debtors seek to show that a negligible distribution to unsecured creditors in a Chapter 13 plan constitutes a "special circumstance" within the meaning of § 707(b)(2)(B)(i), with this section providing the sole means by which the presumption of abuse in the filing of a Chapter 7 case may be rebutted. Second, the Debtors maintain that, in their circumstances, the "means test" of Chapter 7 and the "disposable income" calculation under Chapter 13 are derived from "conflicting sections that seem to give a result demonstrably at odds with the intent of the other section." (Doc. No. 53, at pg. 3). Accordingly, the Debtors maintain that because of inherent conflicts with the two statutes' compatibility, they should be given the benefit of the doubt, and hence be permitted to proceed with their Chapter 7 case.

■ Turning now to the first theory advanced by the Debtors, it is provided in § 707(b)(2)(B)(i) that:

this issue will not be addressed at this junc-

In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

The effect of this section is to give the Court some discretion, albeit circumscribed, to allow changes in the "means test" equation when equity so compels. This authority, as the Debtors point out, may include making downward adjustments in their income when justified. But § 707(b)(2)(B)(i) also makes it clear: to "justify" such an adjustment, there must exist "special circumstances."

The term "special circumstances" in § 707(b)(2)(B)(i) is not specially defined, with its character and qualities being indicated by two examples: serious medical condition or call to active duty in the Armed Forces. For these examples, the Debtors readily concede that their particular circumstances do not give rise to either. Instead, the Debtors ask that the Court extend the meaning of "special circumstances" to their present situation—that of being unable to fund a meaningful Chapter 13 plan.

The issue as to whether a *de minimis* payout to unsecured creditors constitutes a "special circumstance" under § 707(b)(2)(B)(i) has been previously addressed by another court, and answered with an uncompromising no. *In re Johns,* 342 B.R. 626, 629 (Bankr.E.D.Okla.2006). While the court in *In re Johns* did not explain its reasoning in detail, it is hard to find any fallacy with its conclusion: that the "potential payback of zero percent to unsecured creditors is a Chapter 13 is not

ture.

a special circumstance contemplated under § 707(b)(2)(B)."

Nothing in the Bankruptcy Code prohibits a debtor from submitting a Chapter 13 plan of reorganization having little or no value to unsecured creditors so long as it meet the Code's other requirements—e.g., having been proposed in good faith, § 1325(a)(3), meeting the best interest of creditors test of § 1325(a)(4). And while such plans are not favored, there exist a logical disconnect that a "special circumstance" under the Bankruptcy Code could arise from a situation which the Code otherwise permits.

█ To be sure, the two examples given of "special circumstances" in § 707(b)(2)(B)(i) are just that: examples, and thus do not constitute the only types of circumstances which may be used to rebut a presumption of abuse. *Id.* But they do show a commonality; they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control. *See In re Jass,* 340 B.R. 411, 418 (Bankr.D.Utah 2006) (holding that in considering expenses under section 1325(b), court must apply standards under § 707(b)(2)(B) and allow a debtor who fails the means test to rebut the presumption of abuse by showing special circumstances such as a change in income or expenses). Under the statutory interpretation canon of *ejusdem generis,* a court is to limit the sphere of permissible "special circumstance" to one's having such similar traits and characteristics. This interpretive doctrine, meaning literally "of the same kind," holds that a court is to interpret legislatively provided examples of a specific nature as typical of the general category covered. *U.S. v. Parson,* 955 F.2d 858, 869 fn. 15 (3rd Cir.1992).

The common traits given in the examples provided by § 707(b)(2)(B)(i), however, simply do not match what the Debtors

seek to do. The Debtors in this matter seek to use the general phrase "special circumstances" in § 707(b)(2)(B)(i) to modify what Congress made explicit; that only in a Chapter 13 case, not a Chapter 7 case, could the term "current monthly income" exclude child support. And where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 118, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

█ Of course, as the Debtors put forth in their second argument, the Court must look beyond the language of a statute, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress. *Tran v. Gonzales,* 447 F.3d 937, 941 (6th Cir.2006). However, this does not mean that this Court can substitute its judgment for that of Congress. And while the Court does agree that the application of the newly enacted BAPCPA does produce results that were not previously condoned, it cannot be concluded that such results were not intended.

For example, as the Debtors themselves point out, "there are public policy reasons involved with child support." (Doc. No. 53, at pg. 4). But it does not also follow that for those debtors who receive child support, liquidation under Chapter 7 is preferable to staying under the protection of the Court in a Chapter 13. Advantages, in terms of the family unit, potentially exist with proceeding under a Chapter 13. To name just one, while in a Chapter 13 bankruptcy, debtors are not permitted to incur debt or dispose of assets outside the ordinary course. 11 U.S.C. §§ 363(b)(1),

364(b), 1303. Hence, the behavior which originally lead to the debtor's financial problems may be partially alleviated, at least for a period of time, thus benefitting the children. Another practicable consideration also exist for the Bankruptcy Code's modified treatment of child support payments in a Chapter 13 case.

During the course of a Chapter 13, a debtor's plan may be modified, upon request by the trustee, to increase payments. 11 U.S.C. § 1329(a)(1). To this end, child support payments are not of indefinite duration. Thus, were child support payments to terminate during the course of a chapter 13, funds would then be made available to pay unsecured creditors. The same would also be true, if the debtor's income or expenses were to change favorably during this period of time.

In summation, the Court cannot find that the Debtors' situation, whereby they may presently not have the funds available to formulate a meaningful Chapter 13 repayment plan, is a sufficient basis to make an exception to the "means test" promulgated by Congress. Accordingly, with the "means test" resulting in a presumption of abuse, the Debtors, at this time, are not entitled to obtain relief under Chapter 7 of the United States Bankruptcy Code. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b), be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that this case be, and is hereby, DISMISSED.