**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: SCOTT LEE EGEBJERG,
Debtor.

_____

SCOTT LEE EGEBJERG,
                    *Debtor-Appellant,*

v.

PETER C. ANDERSON, United States
Trustee,

                    *Trustee-Appellee.*

No. 08-55301

BK No.
SV 06-12592-GM

ORDER AND
AMENDED
OPINION

Appeal from the United States Bankruptcy Court
for the Central District of California
Geraldine Mund, Bankruptcy Judge, Presiding

Argued and Submitted
March 12, 2009—Orange, California

Filed May 29, 2009
Amended August 3, 2009

Before: Michael Daly Hawkins, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

10055

## COUNSEL

Michael R. Totaro, Totaro & Shanahan, Pacific Palisades, California, for the debtor-appellant.

Kelsi Brown Corkran, Civil Division, Department of Justice, Washington, D.C., for the trustee-appellee.

## ORDER

The Opinion filed on May 29, 2009, and reported at 2009 WL 1492138 (9th Cir. May 29, 2009), is replaced by the Amended Opinion filed concurrently with this Order.

## OPINION

HAWKINS, Circuit Judge:

In this direct appeal from the bankruptcy court, Scott Lee Egebjerg ("Egebjerg") challenges the bankruptcy court's dismissal of his Chapter 7 petition for abuse under 11 U.S.C. § 707(b)(3). In an issue of first impression in this circuit under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), we consider whether a debtor's repayment of a 401(k) loan constitutes a "monthly payment on account of secured debts" or an "[o]ther [n]ecessary [e]xpense" that can be deducted from a debtor's monthly income for purposes of calculating the debtor's disposable monthly income under § 707(b)(2). Because we conclude it is not, the debtor's filing in this case was presumptively abusive under the "means test" of § 707(b)(2). We therefore affirm the bankruptcy court's dismissal of his Chapter 7 petition.

## FACTS AND PROCEDURAL HISTORY

Egebjerg filed a voluntary Chapter 7 bankruptcy petition on December 31, 2006. At the time, he had been employed by

Ralph's grocery store for twenty-seven years and earned a gross income of $6,115.56 per month. Egebjerg was single with no assets. His only secured property was an automobile he used for work and a timeshare. He had unsecured consumer debt of about $31,000.

Approximately two years before he filed for bankruptcy, Egebjerg had taken a loan from his 401(k) plan. The plan automatically deducted $733.90 from his paycheck each month to repay this loan, which was scheduled to be fully repaid by September 2008. According to Egebjerg's amended schedule of necessary expenses (in which he included the 401(k) repayment), he was left with a monthly disposable income of $15.31.[1]

The U.S. Trustee moved to dismiss Egebjerg's Chapter 7 petition, arguing that Egebjerg had improperly included the 401(k) repayment in his necessary expenses. If, the Trustee urged, this amount were not subtracted from income as a necessary expense, Egebjerg's filing was presumptively abusive under the "means test" of § 707(b)(2). The Trustee further argued that even if the presumption of abuse did not arise under § 707(b)(2), the court should still dismiss the case because, under the totality of the circumstances, Egebjerg had sufficient means to repay a meaningful portion of his debts, especially once his 401(k) loan was repaid.

The bankruptcy court rejected the Trustee's first argument, concluding that the 401(k) loan was a "secured debt" and

---

[1]Egebjerg's estimated monthly disposable income on the amended schedule was $170.31, less a $155 deduction for the difference between his actual rent and the applicable monthly rent expense specified in the IRS's Housing and Utility Standards, which debtors are required to use for means test purposes. Egebjerg listed this rent differential as a necessary "Other Expense[ ]" on line 56 of his amended means test form. The government does not challenge this deduction and we express no opinion on its propriety. Instead, we assume, without deciding, that the deduction was proper.

could be deducted from income for purposes of the means test. By including this figure, no presumption of abuse arose under § 707(b)(2).

Still, agreeing with the Trustee on the totality of the circumstances ground, the bankruptcy court dismissed the Chapter 7 petition under § 707(b)(3), noting that, at the time of the court's order in June 2007, the 401(k) loan would be repaid in just over a year, leaving $525 a month to repay unsecured creditors. The court concluded that the debtor could therefore pay a significant amount of his debts in a Chapter 13 proceeding and that, because of his ability to pay, it would be an abuse to permit the case to continue as a Chapter 7 proceeding. The court ordered the case to be dismissed unless the debtor converted to a Chapter 13 within ten days, which Egebjerg did not do.

Egebjerg filed a notice of appeal and requested that the bankruptcy court enter an order certifying the decision for direct appeal pursuant to 28 U.S.C. § 158(d)(2). The bankruptcy court entered the certification, and a motions panel of this court granted Egebjerg's petition for direct appeal and stayed the district court appeal pending circuit review.

## DISCUSSION

### I.  Statutory Background

Prior to BAPCPA, there was a presumption "in favor of granting the relief requested by the Debtor." 11 U.S.C. § 707(b) (2004). This presumption could be overcome if the court found that "granting of relief would be a *substantial* abuse" of Chapter 7. *Id.* (emphasis added). Courts looked to the "totality of the circumstances" to make this substantial abuse determination. *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004).

[1] BAPCPA produced a sea change. There is now no presumption favoring Chapter 7 relief, but an emphasis on repay-

ing creditors as much as possible. H.R. Rep. No. 109-31, pt. 1 at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89. BAP-CPA introduced a mathematical formula, commonly referred to as the "means test," to determine whether a debtor's financial circumstances create a presumption against granting relief under Chapter 7. 11 U.S.C. § 707(b)(2) (2008). A presumption of abuse may be rebutted if the debtor demonstrates "special circumstances" such as "a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B). Even if a debtor's financial situation does not create a presumption of abuse (or if the presumption is rebutted), the bankruptcy court may still dismiss the petition if the debtor filed the petition in bad faith or if the "totality of the circumstances" demonstrates "abuse" of Chapter 7. § 707(b)(3); *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1127 n.1 (9th Cir. 2009).

This case potentially implicates both § 707(b)(2) and § 707(b)(3). However, because the statute is framed to consider the presumptive abuse question first, and resorts to the totality of circumstances analysis only if the debtor survives the means test, we have chosen to address the proper interpretation of § 707(b)(2) first. We review the bankruptcy court's legal conclusions de novo. *In re Fowler*, 394 F.3d 1208, 1212 (9th Cir. 2005).

## II. Presumption of Abuse under § 707(b)(2)

### A. Secured Debt

[2] In calculating the debtor's current monthly income, § 707(b)(2) permits the debtor to deduct "the average monthly payments on account of *secured debts*." § 707(b)(2)(A)(iii) (emphasis added). In the Bankruptcy Code, the term "debt" means "liability on a claim." § 101(12). "Claim" is defined very broadly within the Code to mean any "right to payment," whether fixed, contingent, matured, disputed, secured, and so on. § 101(5). The terms "debt" and "claim" are coextensive,

"flip sides to the same coin." *In re Rifkin*, 124 B.R. 626, 628 (Bankr. E.D. N.Y. 1991); S. Rep. No. 989, 95th Cong. 2d Sess., 23 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5809. Therefore, Egebjerg's 401(k) loan constitutes a "debt" only if the plan administrator has a "claim" for repayment.

**[3]** We join the vast majority of courts in holding that the debtor's obligation to repay a loan from his or her retirement account is not a "debt" under the Bankruptcy Code. *See, e.g.*, *In re Villarie*, 648 F.2d 810 (2d Cir. 1981) (loan drawn on employee's contributions to retirement system not a "debt" because plan has no right to sue a member for the amount of the advance, it is simply offset against future benefits); *Bolen v. Adams*, 2009 WL 605270, *3 (N.D. Miss. 2009) (vast majority of courts have held a debtor's obligation to repay retirement account loan is not a "debt" under the Code); *Eisen v. Thompson*, 370 B.R. 762, 769 (N.D. Ohio 2007) (majority view is that retirement plan loans are not secured debts); *In re Esquivel,* 239 B.R. 146, 152 (Bankr. E.D. Mich. 1999) ("clear consensus" that borrowing from retirement account does not give rise to either secured or unsecured "claim" under the Bankruptcy Code); *see also McVay v. Otero,* 371 B.R. 190, 195 (W.D. Tex. 2007); *In re Fulton,* 211 B.R. 247, 264 (Bankr. S.D. Ohio 1997); *In re Scott*, 142 B.R. 126, 131-32 (Bankr. E.D. Va. 1992); *In re Jones*, 138 B.R. 536, 537-38 (Bankr. S.D. Ohio 1991).

The reasoning behind these decisions is straightforward. Egebjerg's obligation is essentially a debt to himself — he has borrowed his own money. *In re Smith*, 388 B.R. 885, 887 (Bankr. C.D. Ill. 2008); *see also McVay*, 371 B.R. at 197 (collecting cases). Egebjerg contributed the money to the account in the first place; should he fail to repay himself, the administrator has no personal recourse against him. *In re Villarie*, 648 F.2d at 812. Instead, the plan will deem the outstanding loan balance to be a distribution of funds, thereby reducing the amount available to Egebjerg from his account in the future. *See In re Mowris*, 384 B.R. 235, 238 (Bankr. W.D. Mo.

2008); *see also Mullen v. United States*, 696 F.2d 470, 472 (6th Cir. 1983). This deemed distribution will have tax consequences to Egebjerg, but it does not create a debtor-creditor relationship. *In re Smith*, 388 B.R. at 888 ("Nonpayment comes with liability for income taxes and penalties, but nonpayment is a valid, lawful alternative.").

As succinctly explained by one district court:

> Retirement plan loans are qualitatively different than secured debts such as home mortgages and car loans. The retirement plan administrator does not loan the plan participant the administrator's money. It simply deducts the requested loan amount from the participant's own account, and credits the loan payments and interest back to the participant's account. If the participant defaults on the loan, the plan administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction. The participant must treat this deduction as a distribution which is taxable as income to the participant in the default year. The participant may also be subject to an early withdrawal penalty. But, the plan administrator has no right to payment under the Bankruptcy Code.

*Thompson*, 370 B.R. at 768 n.10.

**[4]** Because the debtor's loan repayment obligation is not a "claim" or "debt" under the Bankruptcy Code, the debtor may not include payments on such loans as a deduction for purposes of the means test under § 707(b)(2). *See, e.g.*, *In re Smith*, 388 B.R. at 888; *In re Mowris*, 384 B.R. at 237-38; *McVay*, 371 B.R. at 203; *Thompson*, 370 B.R. at 768-72. This conclusion under BAPCPA is not only supported by the definitions of "claim" and "debt" within the Code, but also by two basic canons of statutory construction.

First, we presume that when Congress legislates, it is aware of past judicial interpretations and practices. *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992). ("When Congress amends the Bankruptcy laws, it does not write on a clean slate.") (internal quotation marks omitted). "Because overwhelming case law preceding [BAPCPA] held that 401(k) loans were not 'debts' under the Code, and because Congress has not expressly said otherwise, the Court must presume that 'debt' retains its pre-2005 Act meaning." *Thompson*, 370 B.R. at 771; *see also In re Mowris*, 384 B.R. at 238 ("The overwhelming majority of pre-BAPCPA opinions held that a debtor's obligation to make payments on a loan taken from a qualified retirement account was not a claim or debt under the Code, and the court must assume that Congress was aware of this judicial interpretation when it enacted BAPCPA.").

Second, we also presume that if Congress includes particular language in one section of a statute but omits it in another, Congress acted intentionally in that exclusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). Here, in BAPCPA, Congress expressly gave Chapter 13 debtors the ability to deduct 401(k) payments from their disposable income calculation, § 1322(f), but did not include any similar exemption for Chapter 7 debtors. Congress also added a section which provides that the automatic stay does not apply to automatic deductions to repay a retirement plan loan, but expressly stated that the provision shall not be construed to provide that such a loan constitutes a "claim" or "debt." § 362(b)(19). "In light of the amendments sprinkled throughout the Code [addressing 401(k) loans] — especially section 1322(f) — the lack of a 401(k) provision in section 707 is a glaring indication that Congress did not intend 401(k) loan repayments to be deducted in Chapter 7." *In re Turner*, 376 B.R. 370, 376 (Bankr. D. N.H. 2007).

Although Egebjerg contends that this construction creates anomalous results, "[t]he explanation for the lack of such a provision in section 707 is that Congress intended to steer

many would-be Chapter 7 debtors toward Chapter 13." *Id.* As one court explained:

> First, 401(k) loan repayments are finite; a loan will eventually be paid off. Second, a Chapter 13 case is prospective, *i.e.*, it encompasses a debtor's current and future financial circumstances for a period of three to five years . . . .Excluding 401(k) loans from the means test evidences a "wait and see" approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan. However, because, as here, 401(k) loans might be paid off within the commitment period of a Chapter 13 case, the ability to increase the monthly plan payment would direct newly available funds to creditors. Such an approach serves both the Congressional intent to protect retirement contributions and "ensure that debtors repay creditors the maximum they can afford," a primary goal of BAPCPA.

*In re Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Penn. 2006).

## B. Other Necessary Expense

In addition to maintaining that his 401(k) loan to himself is a "secured debt," Egebjerg also contends that his loan repayments are an "other necessary expense" for the purposes of applying the means test. We reject that argument as well.

[5] Under the statutory provisions governing the means test, debtors may deduct, in addition to payments on secured debt, their "actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707(b)(2)(A)(ii). In turn, the Internal Revenue Manual ("IRM") lists fifteen categories of

expenses which may be considered necessary under certain circumstances, such as child care, education and court-ordered payments such as alimony and child support. IRM § 5.15.1.10.

The IRM list of categories appears to be nonexhaustive. *See* IRM § 5.15.1.10(1) (noting that other expenses may be considered if they meet the necessary expense test — i.e., if they "provide for the health and welfare of the taxpayer and/or his or her family or [provide] for the production of income."). However, some bankruptcy courts have held that this list *is* exhaustive for purposes of the bright-line means test, because, by the plain language of § 707(b)(2)(A)(ii)(I), Congress expressly limited a debtor's deductions for other expenses to "the *categories specified*" by the Internal Revenue Service. *See In re Turner*, 376 B.R. at 375; *In re Lara*, 347 B.R. 198, 204 (Bankr. N.D. Tex. 2006); *In re Mordis*, 2007 WL 2962903, *2 (Bankr. E.D. Mo. 2007); *In re Whitaker*, 2007 WL 2156397, *4 (Bankr. N.D. Ohio 2007). Other courts have looked beyond the enumerated categories and considered the applicability of IRM § 5.15.1.10(1)'s "necessary expense test" on a case-by-case basis. *See In re Mowris,* 384 B.R. at 238-39; *In re Lenton*, 358 B.R. at 658.

**[6]** We need not resolve this debate in this case, however, because we conclude that under either interpretation, Egebjerg's repayment of his 401(k) loan does not qualify as an "Other Necessary Expense." Such payments do not fit within any of the IRM's listed categories. *See, e.g., In re Barraza*, 346 B.R. 724, 730 (Bankr. N.D. Tex. 2006) (rejecting argument that repayment could be considered an "involuntary deduction" because it is not a condition of the debtor's employment); *see also In re Lenton*, 358 B.R. at 657-58 (same). As discussed above, the 401(k) loan repayments themselves are voluntary in the sense that Egebjerg can simply ask the loan administrator to treat his outstanding loan balance as an early withdrawal from his 401(k) and thereby relieve himself of a future repayment obligation. Doing so

would have tax consequences, but Egebjerg would retain the use of most of the money loaned.

According to Egebjerg, the replenishment of his 401(k) plan is necessary to his long-term "health and welfare," because he is approaching retirement and his 401(k) plan is his only significant asset.[2] But even if we were to look beyond the specified categories to consider the more general "necessary expense test" in the IRM, 401(k) repayments are simply not of the same kind and character as those expenses allowed elsewhere under § 5.15.1.10. For example, dependent care expenses (for care of the elderly or handicapped) are permitted only if there is no alternative to paying the expense, and "[e]ducation" costs are necessary expenses only if they are "required for a physically or mentally challenged child and no public education providing similar services is available," or if they are "required as a condition of [the debtor's] employment." *Id*. We also note that the IRS guidelines themselves provide that "[c]ontributions to voluntary retirement plans are not a necessary expense." IRM § 5.15.1.23; *see also In re Lenton*, 358 B.R. at 658 ("[i]f future voluntary contributions to the 401k plan are not necessary expenses, it is hard to argue that the replenishment of past voluntary contributions to the 401k account by repaying loans is a necessary expense.").[3]

---

[2]Egebjerg does not actually provide his age. He states only that "[s]ince he has been employed with Kroger for 27 years he is not someone who is many years from retirement."

[3]We do not hold that § 5.15.1.23 is controlling, but that it is useful and persuasive in the context of this case— defining the parameters of § 5.15.1.10(1) and what was considered to provide for "health and welfare" at the time Congress cross-referenced the IRM's "Other Necessary Expenses" provisions. We recognize that the extent of the manual's "incorporation" and/or usefulness in interpreting § 707(b)(2)(A)(ii)(I) is a subject of extensive debate, particularly with respect to interpreting the "applicable monthly expense amounts specified under the National Standards and Local Standards." *See In re Ross-Tousely*, 549 F.3d 1148, 1156-57 (7th Cir. 2008) (discussing split in authority). By our narrow decision today, we do not mean to imply that the IRS standards have been incorporated wholesale into the Bankruptcy Code or that they control outcomes on other issues.

Arguing to the contrary, Egebjerg cites *Hebbring v. United States Trustee*, 463 F.3d 902 (9th Cir. 2006), *In re Hill*, 328 B.R. 490 (Bankr. S.D. Tex. 2005), and *In re Vansickel*, 309 B.R. 189 (Bankr. E.D. Va. 2004), for the proposition that voluntary 401(k) contributions are not *per se* unnecessary expenses for the purposes of calculating a debtor's disposable income under § 707(b)(2). What Egebjerg fails to note is that each of these cases either pre-dates the BAPCPA (and therefore pre-dates the means test) or applies pre-BAPCPA law. *See, e.g.*, *Hebbring*, 463 F.3d at 904 n.1. This point is critical because the pre-BAPCPA § 707(b)(2) "totality of circumstances" test for abuse, which now appears (as modified by BAPCPA) as part of § 707(b)(3), is distinct from the current § 707(b)(2) means test. When it introduced the means test, Congress provided, by reference to the IRS guidelines, specific guidance as to what qualifies as a necessary expense for the purposes of applying that test. Our holding in *Hebbring*, which concerns only the former "totality of circumstances" test, is simply not applicable.[4]

**[7]** For all the foregoing reasons, the bankruptcy court erred by allowing Egebjerg to deduct his 401(k) repayment from disposable income for purposes of the means test. If the amount of his loan repayment is included in Egebjerg's income, then a presumption of abuse arises under § 707(b)(2).

## III.    Special Circumstances

**[8]** The bankruptcy court also held, in the alternative, that even if the amount of Egebjerg's loan repayment obligation should not be included as a secured debt or necessary expense, it could be properly included as a "special circumstance" which could rebut the presumption of abuse, citing *In*

---

[4]Egebjerg also argues that our failure to recognize his 401(k) repayments as a "necessary expense" would create a conflict with the Bankruptcy Code's automatic stay provisions. We reject this argument for the reasons already stated in Part II.A.

*re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006). However, *Thompson* was reversed by the district court on this very point on appeal, *Thompson*, 370 B.R. at 772-73, and the majority of courts agree that the mere obligation to repay a 401(k) loan is not itself a special circumstance. *See, e.g.*, *Smith*, 388 B.R. at 888; *In re Mowris*, 384 B.R. at 240; *In re Turner*, 376 B.R. at 378.

Section 707(b)(2)(B) provides:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Thus, Congress did not provide an exhaustive list of "special circumstances," but did indicate examples of situations it would consider sufficient to rebut the presumption of abuse. As one court has noted, both examples given by Congress share "a commonality; they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *In re Castle*, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006).

**[9]** We need not explore the outside parameters of the special circumstance provision, however, for we agree that "retirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition of this term." *Thompson*, 370 B.R. at 773.

While there may be situations in which the debtor's underlying reason for taking out a 401(k) loan may constitute a special circumstance, *see In re Tauter*, 402 B.R. 903, 906-7 (Bankr. M.D. Fla. 2009), Egebjerg's only explanation was that he was using the money to "pay off bills" in the hope of avoiding bankruptcy in the first instance. Although a commendable goal, "the fact that he borrowed from those retirement funds and now wishes to pay the loans back is not a life altering circumstance of the kind referenced in the statute. It is simply the consequence of a prior financial decision." *Smith*, 388 B.R. at 888.

It appears that borrowing from a 401(k) is not an uncommon approach for many debtors, usually stemming from their "longstanding general inability to keep up with their obligations to creditors." *Thompson*, 370 B.R. at 773; *see also In re Mowris*, 384 B.R. at 240; *In re Turner*, 376 B.R. at 378. Indeed, if the original unsecured consumer obligation could not be considered a special circumstance, it would seem problematic to find "special circumstances" for the 401(k) loan that merely replaced those debts. *See In re Jackson*, 2008 WL 5539790 at *3 n.20 (Bankr. D. Kan. 2008); *cf. Turner*, 376 B.R. at 378-79 (401(k) repayment may be special circumstance if taken out for a "special" reason other than general financial problems preceding almost every bankruptcy).

**[10]** Thus, on this record, while we agree with the bankruptcy court's bottom line conclusion, it erred by concluding Egebjerg had demonstrated special circumstances under § 707(b)(2)(B). Because Egebjerg thus did not rebut the presumption of abuse under § 707(b)(2)(A), the bankruptcy court properly dismissed Egebjerg's Chapter 7 petition.

**AFFIRMED**.