**In re Steven Jay ENABNIT and Carol Ann Enabnit, Debtors.**

**No. 12–54955.**

United States Bankruptcy Court, N.D. California.

Jan. 17, 2013.

## ORDER SUSTAINING OBJECTION BY AMERICAN EXPRESS TO SECOND AMENDED CHAPTER 13 PLAN

STEPHEN L. JOHNSON, Bankruptcy Judge.

Creditor American Express Centurion Bank and American Express Bank, FSB ("American Express") objected to confirmation of Debtors' plan on the grounds of failure to comply with the disposable income test of 11 U.S.C. § 1325(b)(1)(B) and lack of good faith pursuant to 11 U.S.C. § 1325(a)(3) based on Debtors' expenses on a timeshare ownership.[1]

The court heard argument on the objection on November 15, 2012. Patrick Calhoun appeared for Debtors and Cheryl Rouse appeared for American Express. For the reasons noted below, the court will sustain American Express's objection to confirmation, without prejudice to the filing of a revised chapter 13 plan and the submission of appropriate evidence to support that plan.

## I. FACTUAL BACKGROUND

Steven Enabnit and Carol Enabnit ("Debtors") commenced this case by filing a voluntary petition under chapter 13 of the Bankruptcy Code on June 29, 2012. In Schedule B, under the category "other personal property," Debtors listed a timeshare lease with a value of $30,000. In Schedule G, Debtors identified the lessor as Diamond Resorts, located in Las Vegas, Nevada, and the timeshare as Kaanapali Beach Club located in Maui, Hawaii. The contract was signed in 2004, and payments are $1,084 per month, plus maintenance

---

1. At the hearing on this matter, the court sustained American Express's objection that Debtors plan needed to take account of a car payment that would no longer be necessary once the note was paid in full, and directed Debtors to modify the plan accordingly.

fees of $841 per month. Debtors did not identify any real property in Schedule A. They listed Diamond Resorts as holding a secured claim in the amount of $44,729 in Schedule D. The only other secured claim is for Debtors' vehicle, a Honda Civic. Debtors owe $314,170 in unsecured debts, the majority of which are credit card debts.

Schedule I shows Steven Enabnit works as a project manager, earning $7,593 per month after taxes and deductions, and Carol Enabnit works as a medical assistant earning net income of $2,274 per month. Debtors' income is above the median for a household of the same size as Debtors' household. They do not own a home.

On October 2, 2012, Debtors filed their Amended Chapter 13 Statement of Current Monthly and Disposable Income (Form 22C) (the "Form 22C"). It shows Debtors' current monthly income in the amount of $15,375.08 and monthly disposable income of $2,238.60. If they contribute that sum to their plan, they could pay as much as $134,316 to unsecured creditors over sixty months.

A summary of Debtors' Form 22 follows:

| | | |
|---|---|---:|
| **Part I** Monthly Income | | $15,375.08 |
| **Part II** Commitment Period | | 5 years |
| **Part IV** Deductions from Income | | |
| Subpart A | **IRS Allowed Expenses** | |
| | Food, Apparel | $1,029.00 |
| | Health Care | 120.00 |
| | Non–Mortgage Expenses | 503.00 |
| | Mortgage/Rent | 2,761.00 |
| | Transportation | 812.00 |
| | Automobile Ownership Costs | 341.12 |
| | Other Expenses: Taxes | 4,204.01 |
| | Other Expenses: Life Ins. | 418.85 |
| | Other Expenses: Health Care | 30.00 |
| | Other Expenses: Telecom | 70.75 |
| | | $10,289.73 |
| Subpart B | **Other Additions** | |
| | Health Insurance | $319.28 |
| | Additional Food & Clothing | 35.00 |
| | Total Subpart B | $354.28 |
| Subpart C | **Future payments—Secured Debts** | |
| | Honda | $154.88 |
| | Diamond Resorts | 1,084.00 |
| | Payments on Priority Debts | 357.65 |
| | Ch. 13 Admin. Expenses | 108.94 |
| | Total Subpart C | $1,705.47 |
| **Disposable Income Calculation** | | |
| | Current Monthly Income | $15,375.08 |
| | Qualified Retirement Deductions | –787.00 |
| | Total of Deductions (subparts A–C) | –12,349.48 |
| | **Monthly Disposable Income** | **$2,238.60** |
| **Part VI** | **Additional Expense Claims** | |
| | Timeshare Maintenance | $840.66 |
| Total Costs of Timeshare (Boxed Above) | | $1,924.66 |

Debtors' Second Amended Plan ("Plan"), filed on October 31, 2012, requires them to contribute $1,025 for each of the first six months, and $1,500 for the balance of the 60 months the Plan will run, for a total of $87,150. The Plan provides for $1,084 per month to be paid outside the Plan to Diamond Resorts on account of the timeshare obligation. It states that general unsecured creditors will receive a minimum of $50,943.20.

American Express filed an objection to the original plan on August 10, 2012, and a supplemental objection to confirmation of the amended Plan on November 1, 2012 (collectively "Objection"). The essence of American Express's Objection is that Debtors are not paying enough to unsecured creditors under their Plan. American Express asserts that Debtors are paying only 17% on unsecured claims if they pay the amount proposed in their Plan, despite the fact that they make $15,375.08 per month. American Express complains that Debtors intend to spend $1,924.66 per month on a Hawaiian timeshare, which American Express asserts is neither reasonable nor necessary. American Express calculates that if that money was plowed back into the Plan, Debtors would pay $115,479.60 ($1,924.66 × 60 months) more to unsecured creditors.

The timeshare creditor, Diamond Resorts, did not file a proof of claim. Debtors did not submit a declaration or any evidence in response to the Objection. The gist of Debtors' argument in response to American Express's complaints is that chapter 13 trustee does not object to the deductions for the timeshare.

At the hearing on the Objection, Debtors' counsel stated that he was not sure if the timeshare was a shared fee ownership, but asserted the claim of Diamond Resorts is secured by the real property.

## II. DISCUSSION

### A. Burden of Proof

■ The burden of proof on confirmation of a plan lies with the debtor. *In re Davis*, 239 B.R. 573, 577 (10th Cir. BAP 1999); *In re Padilla*, 213 B.R. 349, 352 (9th Cir. BAP 1997).

### B. Chapter 13 Confirmation Standards
#### 1. Disposable Income Test

A chapter 13 plan that does not pay unsecured creditors in full cannot be confirmed if a creditor objects and the debtor is not paying "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). For the purposes of § 1325(b), "disposable income" means current monthly income "less amounts *reasonably necessary* to be expended—(A)(i) for the maintenance and support of the debtor or a dependent of the debtor ..." § 1325(b)(2) (emphasis added). Amounts that are "reasonably necessary" are determined with reference to 11 U.S.C. § 707(b)(2)(A) and (B) if the debtor's income is above the median for the state, as they are here. *In re Ransom*, 577 F.3d 1026, 1028 (9th Cir.2009), *aff'd* —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). Section 707(b)(2)(A) provides that an above-median debtor's expenses be calculated using under National Standards and Local Standards issued by the Internal Revenue Service.[2] These National Standards and Local Standards provide for common expenses such as housing,

---

**2.** *See* http://www.justice.gov/ust/eo/bapcpa/ meanstesting.htm

utilities, food, clothing, and health insurance.

## 2. *Payments on Secured Debts are Allowed Generally*

■ Debtors are permitted to deduct secured debt payments to arrive at their projected disposable income. Section 707(b)(2)(A)(iii) provides, "The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; ... divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii). "Read together, § 707(b)(2)(A)(ii) and (iii) have been understood to allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, and also any payments on secured debt that will come due in the sixty months after the petition date." *In re Welsh,* 465 B.R. 843, 849 (9th Cir. BAP 2012).

■ American Express argued that the timeshare is a luxury item and not reasonable or necessary under the disposable income test. This issue was addressed in *Welsh,* 465 B.R. at 848–51, which held that § 707(b)(2)(A) "allows a debtor to deduct from current monthly income payments on secured debts, averaged over sixty months as provided in § 707(b)(2)(A)(iii), regardless of whether the collateral is necessary." *Welsh,* 465 B.R. at 850. This conclusion is supported by a leading bankruptcy treatise. *See Collier on Bankruptcy,* ¶ 707.04[3][c] ("it is clear that the contractual payments are not limited to only those secured debts that are for necessary property."). As pointed out in *Welsh,* the only instances where payments for secured debts cannot be deducted under § 707(b)(2)(A)(iii) occur when the debtor is surrendering the property or avoiding the lien securing the claim. *Welsh,* 465 B.R. at 851.

## C. *The $1.084 Monthly Payment for the Timeshare*

■ Debtors contend the $1,084 payment to Diamond Resorts is permissible because it is a secured debt. The record in this case does not adequately support this assertion. Diamond Resorts did not file a proof of claim. The Debtor's schedules are internally inconsistent, offering no assistance in the determination. Debtors listed the claim of Diamond Resorts as secured in Schedule D but did not describe the property subject to the lien, as required in Schedule D. Adding to the confusion, Debtors listed the timeshare interest as personal property in Schedule B and not real property on Schedule A. It is difficult to conclude on the record presented that Debtors' proposed payments to Diamond Resorts for the timeshare are on account of a secured claim.

■ Property interests are defined by state law. *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Without the timeshare contract or any other evidence, the court cannot determine whether the Debtor's interest in the timeshare is determined under California law, Nevada law where Diamond Resorts is located, Hawaii law where the timeshare apparently is located, or some other jurisdiction.

■ For purposes of discussion, under California law, a timeshare interest may include interest in real property or it may not. *See* Bus. & Prof.Code § 11210 *et seq.; see, e.g., Berrien v. New Raintree Resorts Int'l, LLC,* 276 F.R.D. 355, 357 (N.D.Cal. 2011) (Plaintiffs, who are California residents, purchased vacation timeshare but did not own an interest in any real property because the timeshare interest is a "beneficial trust interest in a specific Club resort property"). California defines a

"time-share estate" as a right to occupy a timeshare property plus a freehold estate interest, whereas a "time-share use" only has a right to occupy a timeshare property. Bus. & Prof.Code § 11212(x); *see also* Bus. & Prof.Code § 11213 (only a timeshare estate constitutes an interest in real property for tax purposes).

If the claim of Diamond Resorts is not secured under applicable state law, Debtors cannot take the deduction under § 707(b)(2)(A)(iii). Moreover, because Debtors propose to pay Diamond Resorts in full, it is possible the Plan discriminates against other unsecured creditors without any supporting reason. *See* 11 U.S.C. § 1322(b)(1); *In re Wolff,* 22 B.R. 510 (9th Cir. BAP 1982) (providing a four-part test for determining whether discrimination among classes of claims violates § 1322(b)(1)).

D. *The $841 Per Month Timeshare Maintenance Fees*

■  In addition to the monthly payment on the secured debt for the timeshare, Debtors also deducted $840.66 under Other Expenses in Form 22C. This category provides: "List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)." That section states that a debtor may deduct "actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in

effect on the date of the order for relief ..." 11 U.S.C. § 707(b)(2)(A)(ii)(I). In other words, unlike the secured payments on the timeshare, Debtors must show that expenses in this category are required for the health and welfare of Debtors.

The Internal Revenue Manual ("IRM") lists sixteen categories of expenses which may be considered necessary under certain circumstances. *See* IRM § 5.15.1.10, It also provides that other expenses may be considered if they meet the necessary expense test, i.e. they provide for the health and welfare of the taxpayer or provide for the production of income. IRM § 5.15.1.7 and 5.15.1.10; *In re Egebjerg,* 574 F.3d 1045, 1051 (9th Cir.2009). The language in Form 22C for Other Expenses allows a deduction for expenses that are "required for the health and welfare" of debtors and their family and parallels the necessary expense test in the IRM.

■  The maintenance fees for Debtors timeshare do not appear to fit within any of the IRM's listed categories. Additionally, because Debtors did not offer any arguments or evidence that the maintenance fees for the timeshare, or the timeshare itself, is necessary for Debtors' health and welfare, Debtors did not carry their burden to show that these fees are permissible deductions under Other Expenses.[3]

E. *The Good Faith Requirement*

■  American Express argues in the alternative that Debtors' Plan was not proposed in good faith. A Chapter 13 plan shall be confirmed if, among other factors, the plan has been proposed in good faith

---

**3.** Although the IRM appears to allow other expenses so long as they meet the necessary expense test, the plain language of § 707(b)(2)(A)(ii)(I) expressly limits deductions for other expenses to "the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." *See Egeb-*

*jerg,* 574 F.3d at 1051. Like the Ninth Circuit in *Egebjerg,* the court does not decide whether other expenses must fit within one of the enumerated categories in IRM § 5.15.1.10 for purposes of the means test because Debtors have not shown the expenses at issue pass the necessary expense test.

and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3). A finding of good faith is mandatory for confirmation of a Chapter 13 plan. *In re Chinichian*, 784 F.2d 1440, 1442–44 (9th Cir.1986). In *Welsh*, the Bankruptcy Appellate Panel found that so long as a deduction for secured debts met the requirements of § 707(b), it could not be a basis for finding a plan was not proposed in good faith. In other words, compliance with § 1325(b)(3) and § 707(b)(2) leads to a finding of good faith under § 1325(a)(3).

The court does not accept that conclusion. Judge Pappas' dissent in *Welsh*, notes that "it is the long-standing law in the Ninth Circuit that, when there is a contest about a chapter 13 debtors' good faith, the bankruptcy court must focus upon whether the debtor's plan treats their creditors 'equitably.'" *Welsh*, 465 B.R. at 858, citing *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982). The test for good faith is the totality of the circumstances on a case-by-case basis, including taking into consideration "the substantiality of the proposed repayment" and "all militating factors." *Id.* at 859. Judge Pappas concluded in *Welsh*, that even if current payments comply with the means test, the bankruptcy court still must determine whether a plan treats debtors' other creditors equitably. *Id.* at 860–61 n. 22 (listing cases finding § 1325(a)(3) requires the court to examine the nature and amount of secured debt).

This court, and at least one other court in the Ninth Circuit, agrees with

Judge Pappas' dissent on this point.[4] *See In re Vandenberg*, 2012 WL 1854298 (Bankr.D.Ariz.2012). As Judge Pappas correctly noted, the means test calculation incorporated in § 1325(b) and the good faith analysis in § 1325(a)(3) are "distinct plan confirmation requirements." *Welsh*, 465 B.R. at 861.

As indicated above, for the good faith requirement, the court applies a "totality of the circumstances" test. To find a lack of good faith, "a bankruptcy court need not decide that the debtor is acting with fraudulent intent, ill will directed to creditors, or that the debtor is affirmatively attempting to violate the law." *Id.* at 858 n. 13, citing *In re Leavitt*, 171 F.3d 1219, 1224–25 (9th Cir.1999).

The record here is not sufficient to make a finding that Debtors have proposed their Plan in good faith. The Diamond Resorts claim is either secured or it is not secured. The record does not support a finding on that point. Even if the claim is secured, the court cannot determine if paying the expense constitutes bad faith. The record does not show why Debtors need the property, why it makes sense for them to retain it, or other options they might consider that do not cost almost $2,000 per month. On this record, Debtors have not carried their burden to show that the Plan was proposed in good faith.

### III. CONCLUSION

For the foregoing reasons, the Objection of American Express to the confirmation

---

**4.** "The decisions of the Bankruptcy Appellate Panel of the Ninth Circuit ('BAP') do not carry the weight of stare decisis. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 471 (9th Cir.1990). The decisions of the BAP are binding only on the judges whose orders have been reversed or remanded by the BAP in that particular dispute. In all other instances, the decisions of the BAP are effective only to the extent they are persuasive." *In re Locke*, 180 B.R. 245, 254 (Bankr.C.D.Cal. 1995); *see also In re Rinard*, 451 B.R. 12, 20–21 (Bankr.C.D.Cal.2011) ("BAP decisions are not binding on bankruptcy courts, as district court decisions are not.").

of Debtor's Second Amended Plan is SUSTAINED.

IT IS SO ORDERED.